## PRICE v. WHITMAN et al.

The Constitution provides that if any bill presented to the Governor (having passed both houses of the Legislature) shall not be returned within ten days after it shall have been presented to him, *Sundays* excepted, the same shall become a law in like manner as if he had signed it, unless the Legislature, by adjournment, prevent such return.

The decision in the People *ex rel.* Hepburn *v.* Whitman, was predicated upon an error in the printed copy of the Constitution, the word "Sunday" being there used in the singular.

The ten days given by the Constitution must be computed by excluding the day on which the bill is presented to the Governor.

Where it is necessary to give effect to contracts and carry out the intention of parties, the first day is, by the Courts, included, or excluded, as the case requires, there appearing to be no uniform rule on the subject; but when a time for deliberation is allowed, the exclusive rule should be adopted.

APPEAL from the District Court of the Sixth Judicial District.

This was a petition in the Court below for a writ of *mandamus* upon the Comptroller, Secretary of State, and Treasurer, to compel them to examine, settle, audit, and allow the claim of the petitioner, Thomas F. W. Price, under the provisions of a bill which passed both houses of the Legislature, and was presented to the Governor on April 3d, 1856, and which is claimed to have become a law by not having been returned by the Governor within ten days thereafter, the Legislature being in session. The Journal of the Senate, where the bill originated, shows that the bill was returned by the Governor, without his approval, on the fifteenth of the month. Parol evidence was introduced in the Court below to prove that the bill was returned on the fourteenth, which is not, however, considered in this Court.

On the return of the bill, the Senate proceed to vote whether the bill should pass by a two-thirds vote, as vetoed, and it failed to obtain the requisite majority.

The Court below dismissed the petition, and plaintiff appealed.

*Robinson, Beatty & Botts, and Jo. G. Baldwin,* for Appellant.

The bill for the relief of the plaintiff, above referred to, passed both houses of the Legislature, and was duly presented to the Governor on Thursday, the third day of April, 1856, and was retained by him until Tuesday, the fifteenth day of April, 1856, when he returned it to the Senate, being the house in which it originated, with his objections. § 17, Art. IV, of the Constitution.

Under this clause of the Constitution, and the foregoing facts, it is contended that the bill became a law on the fourteenth day of April, and that the veto interposed the next day, came too late, and was therefore inoperative and void. In order to determine this question, it is necessary to ascertain and fix the day

Price v. Whitman.

on which the ten days began to run. If the day of the presentation to the Governor be included, then the ten days expired on the fourteenth day of April, but if this day be excluded, then the ten days expired on the fifteenth day of April, the day of the veto, and this is the whole question at issue.

Before making an appeal to authority, it seems to be clear, on principle, that the day of the service on the Governor should be included, for the reason that at the moment he receives the bill he can either sign it or return it with his objections. It is undeniable, therefore, that in point of fact, the Governor has the day of service of the bill in which to act on it, and if this day be not included in the count, the Executive instead of having ten days in which to approve or reject, will have eleven. It may be objected to this that the object of the Constitution was to give ten clear days in which to act, and as the bill might be served on him at a late period of the day, if the day of service were included in the count, this intention of the Constitution would be frustrated.

The answer to this is, that the object of the law in computing time, is to lay down a fixed rule, and in aid of this object, and to prevent confusion and uncertainty, fractions of a day, (unless in the single case of a question of priority of acts done on the same day,) are not computed; and it has therefore been held, from the earliest period of the common law, that where the computation is to be made from an act done, (and which is precisely this case, for the act done is the service of the bill on the Governor,) the day on which the act is performed, is included.

The leading case on this subject is Clayton's case, (5 Coke's R.,) where it was resolved "that a lease of three years which took effect on the twentieth day of June, should end on the nineteenth day of June in the third year; for the law in this computation doth reject all fractions and divisions of a day, for the uncertainty which is always the mother of confusion and contention; that in this case the day of the delivery of the lease should be taken, inclusive, and the day is parcel of the demise."

The authority of this case is acknowledged in Bellasis v. Hester, 1 Lord Raymond's Rep., 280, which was an action on a bill of exchange at ten days' sight. The bill was seen and accepted the fifth of May, and suit brought the fifteenth of May, and it was contended that the action was prematurely brought observing, " the day on which the bill was shown shall be reckoned one of the ten. For according to Clayton's case, and all the books where the computation is to be made from an act done, the day on which the act was done must be included, since there is no fraction in a day, that act relates to the first moment of the day in which it was done, and was as if it were then done."

The principle here announced was again confirmed in Norris v. The Hundred of Gautis, Hobart's Reports, 139, and by Lord

Mansfield, in Rex. *v.* Adderly, 2 Douglass, 465; also in Castle *v.* Burdett, 3 Term Rep., 623, the Court observing that "Where the computation is to be made from an act to be done, the day of such act was to be included."

To the same effect, see Glossington *v.* Rawlins, 3 East., 407, where the Court cite and rely on the foregoing authorities; also Sergeant Williams' note 3, to Pinkey *v.* The Inhabitants de Rotel, 3 Saunders' R., a, b; and Pellews *v.* Manford, 17 Eng. C. L. R., 72; Osborn *v.* Rider, Cro. James, 135; 4 Esp., 224; 1 Henry Bl., 14; Salkeld, 625.

The above are the principal English cases, and they are all clear and consistent.

The conflicting cases, of which there are a number, are where the compution is to be made, not from an act done, but "from date," or "from the day of the date," etc., some of the Judges holding these words to include, and others to exclude, the first day. Of this class is the case of Pugh *v.* The Duke of Leeds, Cowp., 714.

The case of Lester *v.* Garland, in 15 Vesey, cited by the Attorney-General, was also a case in which a point was strained to prevent a forfeiture.

The law of England is thus laid down by a modern writer—Dwarris on Statutes, 768, 769, Law Library, 89: "When a statute limits a proceeding against a party to six months, a year, etc., after an act done, the day on which the act was done is to be reckoned in the six months, year," etc. All the other text writers, ancient and modern, lay down the rule the same way. Com. Dig. Temp. A., 15 Vin. Ab., 554; 2 Evans, 50.

In America, there is some conflict of authority, but the weight of it is in support of the English rule.

Arnold *v.* United States, 9 Cranch R., 119; Pierpont *v.* Graham, 4 Wash. C. C. R., 240; Hampton *v.* Evengellie, 2 Brown, 18; Thomas *v.* Afflick, 16 Penn. State R., 14; Barto *v.* Ablee, 16 Ohio R., 408; Jacobs *v.* Graham, 1 Blackford, 392; Ryman *v.* Clark, 4 Blackford, 329; Lang *v.* McClure, 5 ib., 319.

The attention of the Court is particularly invited to the reasoning of the opinion (Judge Simpson) in the case of Chiles *v.* Smith's Heirs, 13 B. Monroe, 460.

*Dibbs v.* Zeigler, 1 Green's R., 164; Temple *v.* Caistens, ib., 492; Morrison *v.* Cassidy, 25 Miss. R., 194; Fortiners' case, 2 Harrington, 461; State *v.* Jackson, 1 Southard, 323; 3 Halstead, 303; 7 ib., 205; Nugent's case, 1 Martin, 102.

*Upton & Hereford* for Respondents.

BURNETT, J., delivered the opinion of the Court.

On the third day of April, 1856, a bill, which had duly passed both branches of the Legislature, was presented to the Governor.

The Governor returned the bill to the Senate, in which it origi-
nated, with his objections, and the veto was concurred in by
that body.   The Journal of the Senate shows that the bill was
returned on the fifteenth of the same month, while it was shown,
by parol proof, that it was returned on the fourteenth.   The
plaintiff objected to the introduction of the parol proof, to con-
tradict the Senate Journal, but the objection was overruled, the
testimony admitted, judgment was given for defendants, and the
plaintiffs appealed.

The third day of April being Friday, there were two Sundays
intervening between the third and fifteenth.

The view we shall take of this case, renders it unnecessary to
decide the point as to whether the parol testimony was properly
admitted or not.

The seventh section of the fourth article of the Constitution
provides that if any bill, presented to the Governor, " shall not
be returned within ten days after it shall have been presented
to him, (Sundays excepted,) the same shall be a law, in like man-
ner as if he had signed it, unless the Legislature, by adjournment,
prevent such return."

The decision of this Court, in the case of The People ex rel. H.
P. Hepburn v. Whitman, October, 1856, was predicated upon
the fact, that "Sunday," in the singular, was found in the printed
copy of the Constitution.   Upon an examination of the original
copy of the Constitution, on file in the office of the Secretary of
State, it was found that the printed copy was not correct.   It
should be " Sundays," and not " Sunday."   The correction is
made in the errata to Wood's Digest.

The two intervening Sundays not being counted, the only
question is, whether the return on the fifteenth, was within the
ten days allowed by the Constitution; and the answer to this
question will depend upon, whether the first and last days be
both counted.   If both are included, then the bill was not returned
in due time, but if either be excluded, the bill did not become a
law, by lapse of time.

The cases that have arisen in the Courts of England, and those
of the several States, have given rise to much critical inquiry
into the meaning of terms.   Perhaps no class of questions has
given rise to so much verbal criticism, as cases regarding the
mode of computing time.   Many most refined distinctions have
been raised, sustained, and then abandoned by the Courts; es-
specially in England.   In many cases the meaning seems to
have been entirely explained away.

The English authorities are very fully reviewed, in the opinion
of Lord Mansfield, in the case of Pugh v. The Duke of Leeds.
2 Cow., 714.   For a time, the distinction between the expres-
sions "from the date," and "from the day of the date," was sus-
tained; but finally it was determined that they meant the same

thing. And in some cases it was held, that they both meant; not only the same thing, but that they were both *exclusive.* But in that case, Lord Mansfield held, that the word *from,* may mean either exclusive or inclusive of the day; and whether it meant one or the other, depended upon the context and subject-matter. The construction there held was inclusive.

Another distinction long held, and still maintained, perhaps, by the weight of authority, was this: When the computation of time was to commence from *an act done,* then the count was to be inclusive of the day; but when it commenced from a day stated, the count shall be exclusive.

But like the distinction between "from the date," and from the day of the date," there would seem to be no substantial and good reason for it. It is a distinction without a difference. In one case, the day is expressly designated by the contract, or by the law; and in the other case, by a future event, the exact time of which could not be specified *before* it happened. But in both cases, the *day* from which the count must commence is fixed; in one case by *prior* statement, and in the other by an *after* event, and in *both* cases, with equal *ultimate certainty.* Then if we have the exact day ascertained, why should there be any difference in the two cases? From the nature of the case, the exact day *can* be specified in advance in the one instance, and *cannot* be thus stated in advance in the other; yet when the act is done, the exact day is equally ascertained. Then why should there be any difference in the mode of computation? These different *modes* of specifying the day are adopted from *necessity,* but both are ultimately equally certain, and the mode of computing the time should be the same in both cases. So, the distinction between "from the date," and "within" so many days, months, or years from the date, or from the act done, is not well founded. The computation should not be at all affected by the use of these different forms of expression. The construction should be such in each case as to carry out the intention of the parties, and give effect to their contracts.

In the case of Lester *v.* Garland, 15 Vesey, Jr., 248, the time was to be computed from the testator's death; and it was held, that the six months were exclusive of the day of the death. Sir William Grant, in his opinion, refers to several authorities which exclude the day of the act, and says: "Here the reason of the thing requires the exclusion of the day from the period of six months, given to Mrs. Painter, to deliberate upon the choice she would make."

The day of the date is now *excluded* in the computation of time on notes and bills of exchange. Story on Notes, § 211—Bills, § 329.

The regulations adopted by the English Courts, Hil. J., 2 W.,

4, *exclude* the first, and include the last day. The same rule is adopted by our Practice Act, § 530.

It would require more time than would be consistent with the other business of this Court, to examine *in extenso* all the authorities referred to by the learned counsel in this case. But the remarks of the learned commentator to Ves. Jr., Reports, 15; V. Jr., 248, that " of late the general rule of construction seems to have been to *exclude* the first day," would seem to be substantially true. It would be impracticable to lay down any rule in advance, applicable to every case that may arise. When the entire validity of an instrument or a title must fail, and the true intention of the parties be defeated unless the first day be included, then it should be done.

But when a certain time for deliberation is given, the *exclusive* rule should be adopted. It was doubtless the intention of the framers of the Constitution, not only to fix a definite time within which the Governor should return the bill, but also to allow him ten full days for deliberation. If this were not so, Sundays would not have been excluded. And as a fraction of a day cannot be counted, by excluding the first and counting the last day, the full time will be in general allowed the Executive. This rule substantially allows the Governor the same time as if it were computed from the exact moment the bill was presented, to the exact time when returned. It is a rule more in consonance with the reason of the case, and the fair intent of the Constitution. It also accords with the rule in civil practice in our Courts. Under all the circumstances, we think it the most satisfactory.

Judgment affirmed.

TERRY, C. J.—I concur in the foregoing opinion. From a careful examination of all the authorities, both English and American, to which we have access, I am satisfied that there is no uniform rule for the computation of time, whether we reckon from an event or a date; the Courts generally including, or excluding, the first day, as it was necessary to give effect to contracts, and carry out the intention of the parties. Thus, in the case of Pugh *v.* The Duke of Leeds, (2 Cowper, 714,) where, under a power to make a lease in possession, and not in reversion, a lease was executed for twenty years " from the day of the date," the Court held that the day of its execution was *included.* So, in the Countess of Portland's case, where a lease for crown-land had been taken for a term of years " from the day of the date," the statute forbidding the creation of any estate in such lands to commence *in futuro.* In these cases, such a construction was necessary to uphold the contracts.

Per contra, in the case in 15 Vesey, Jr., where a widow was required by will to give bond, within six months after the testator's death, that she would not contract a second marriage, and

the bond was executed on the last day of the time limited, excluding the day of testator's death, it was held to be a compliance with the terms of the will.

The masterly review of the English cases by Lord Mansfield, in Pugh v. The Duke of Leeds, shows conclusively their entire want of uniformity.

The American authorities are equally conflicting. The decisions of New York, Massachusetts, South Carolina, Texas and Pennsylvania, are opposed to those of Ohio, Indiana, Kentucky, Iowa, New Hampshire and Delaware. The Constitution intends that no bill shall become a law without the concurrence of the Governor and a majority of each house of the Legislature, or two-thirds of each house. The assent of the Executive is presumed after a silence of ten days; but, if within this time, the bill is returned without approval, it is defeated, unless passed by a vote of two-thirds of each house.

In this case the bill was, within ten days, exclusive of the day of its presentation to the Governor, returned to the house in which it originated, and the Executive veto was concurred in; so, it clearly appears that it was not the will of the Governor, or of a constitutional majority of the Legislature, that it should become a law.

Under these circumstances, if the current of decisions was uniform and consistent, we might feel constrained, by the weight of authority, to adhere to the rule established; but the decisions being, as we have shown, in conflict, I think we should follow the example of the English Courts, and construe the clause so as to carry out, and give effect to the intention of the framers of the Constitution.

The judgment should be affirmed.