CASE 57—PETITION ORDINARY—APRIL 1.

## Long vs. Hughes.

#### APPEAL FROM UNION CIRCUIT COURT.

The section of the *Civil Code* (371) which requires an application for a new trial to be made "within three days after the verdict or decision was rendered," means three *juridical* days. The day of the decision and the day of the motion must both be computed. (13 *B. M.*, 460; 1 *Met.*, 548.)

JEFF. BROWN for appellant.

HARLAN & HARLAN, for appellee, cited *Civil Code, sec.* 371; 1 *Met.*, 548; 13 *B. M.*, 460.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The 25th day of April, 1862, was Friday; the 28th day was Monday, the day on which the motion for a new trial was made. This was "*within three days after the verdict or decision rendered*," as provided by section 371, Civil Code, for this means juridical days; therefore Sunday must be excluded. The intention of the Legislature was to give three days, on any one of which the party could move for a new trial; hence the days of a recess should not be counted, because, by the action of the court, the party would be precluded from his motion. Doubtless the day on which a verdict and judgment is rendered should be computed, for, as said in *Chiles vs. Smith's heirs* (13 *B. M.*, 460), " when the computation is to be made from *an act done*, the day in which the act wa done must be included." * * * " But when the computation is to be *from the day* itself, and not from the *act done*, then *the day* in which the act *was done* must be

*excluded.*" This rule was fully considered and recognized in *Batman vs. Magowen, &c.* (1. Met., 548).

The requirement of the Code is, within three days of the *decision*—the act done—not the *day* in which the act was done; hence, the day of the decision and the day of the motion must both be computed as of the three days given within which to make the motion.

The bill of exception does not show that the instructions given at plaintiff's instance were objected to. This is essential, as has often been held by this court; and unless the objections appear, this court cannot correct any error which may have been committed, though it may appear that the instructions were "excepted to," which does appear in this case.

Whether the court erred in refusing defendant's two instructions, depends on the character of the tenancy. How or under whom Long was holding does not clearly appear; but from all the evidence and circumstances, it may be fairly presumed he was holding under Brown. Whatever may have been the mutual rights and duties of the parties, growing out of the written lease of 1847, and written contract of 1850, and the various assignments of the lease, all these seem to have been modified by the parol agreement between Brown and J. R. Hughes in September, 1853, as proved by W. G. Hughes, without objection by defendant, that Brown acknowledged Hughes had given him notice to remove the office, and "then promised that if he did not remove the house therefrom in a reasonable time, say six months, he would pay rent to said Hughes for the *house* and *lot.*" As Brown did not remove the house within six months, he, and those holding under him, must be regarded as tenants at will or sufferance, which by section 5, of chapter 56, 2 Stanton's Revised Statutes, 91, "may be terminated by the landlord giving one month's notice, in writing, to the tenant, requiring him to remove."

The first instruction being predicated on the defendant's right to have three months' notice, was properly refused; the second, limiting Hughes's right to recover only if he wanted to sell the lot, or build thereon, was ignoring the verbal contract as proved by W. G. Hughes, and relating back to the original written lease; for which reason it was properly refused.

As there was no error in refusing these instructions, the judgment is affirmed.