[S. F. No. 1677. Department Two.—February 16, 1901.]

## J. J. SCOVILLE, Assignee, etc., Respondent, v. A. ANDERSON, Appellant.

Insolvency—Title of Assignee—Attachment and Sale—Action to Quiet Title.—The title of an assignee in insolvency takes effect by relation as of the date of the commencement of the insolvency proceedings; and he may maintain an action to quiet his title against a purchaser of the property under execution by virtue of an attachment levied within one month prior to that date.

Id.—Order of Court Permitting Judgment—Stay of Execution—Collateral Attack.—The action of the assignee to quiet his title against the purchaser under such execution, which was stayed by the terms of the Insolvent Act, is not a collateral attack upon the order of the court, made under section 49 of that act, permitting the creditor to proceed to judgment, in order to ascertain the amount due, to be proven under the act, nor upon the judgment so permitted.

Id.—Dissolution of Attachment—Computation of Time—Fraction of Day.—In computing time to ascertain whether an attachment was issued within one month prior to the commencement of the insolvent proceedings, the date of such commencement must be excluded, and any fraction of a day must be disregarded; and an attachment levied at the hour of 12:30 P. M. on the same

day of the month preceding as that on which the petition in insolvency was filed in the succeeding month, though filed at the hour of 4:20 P. M., must be deemed levied within one month prior thereto, and is dissolved by operation of law.

ID.—FRACTION OF DAY, WHEN REGARDED.— A fraction of a day may be regarded when the question relates to the relative order of occurrences happening on the same day involving the legality or priority of private rights; but it is not to be regarded when measuring or computing the time from one date to another.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Reed & Nusbaumer, and H. W. Hutton, for Appellant.

Fractions of a day may be shown wherever rights are involved in the exact order of time or in determining whether a certain length of time has elapsed from one act to another. (*People v. Clark,* 1 Cal. 408; *Craig v. Godfroy,* 1 Cal. 415, 416[1]; *People v. Beatty,* 14 Cal. 571; *Hoyt v. San Francisco etc. R. R. Co.,* 87 Cal. 610; *Chapman v. Bank of California,* 88 Cal. 421; *Westbrook Mfg. Co. v. Grant,* 60 Me. 88[2]; *Godson v. Sanctuary,* 4 Barn. & Adol. 255; *Main v. Gilman,* 11 Fed. Rep. 214.)

Henry N. Beatty, and W. W. Sanderson, for Respondent.

In the computation of time the first day must be excluded, and the last included. (Code Civ. Proc., sec. 12; Pol. Code, sec. 10.) Fractions of days are not to be noticed except where it is necessary to determine the relative order of events. (*Iron Mountain Co. v. Haight,* 39 Cal. 540; *National Bank v. Burkhardt,* 100 U. S. 689; *Louisville v. Savings Bank,* 104 U. S. 472.) They are not considered in computing time under the exclusive method of computation from one date to another, applicable to such cases as the present. (*Westbrook Mfg. Co. v. Grant,* 60 Me. 88[3]; *Miner v. Goodyear etc. Mfg. Co.,* 62 Conn. 410.)

HENSHAW, J.—Upon January 22, 1896, A. Anderson, defendant and appellant herein, commenced an action in the

---

[1] 54 Am. Dec. 299.　　　[3] 11 Am. Rep. 181.

[2] 11 Am. Rep. 181.

superior court of the county of Alameda against one William Schmidt to recover a money judgment. Thereafter, on the twenty-fourth day of January, at the hour of 12:30 P. M., he caused an attachment to be levied upon certain real estate of William Schmidt, a member of the copartnership of George F. Smith & Co., which real estate is situated in the city and county of San Francisco. At the hour of 4:20 P. M. of the twenty-fourth day of February, 1896, a petition was filed in the superior court of the city and county of San Francisco, asking that the partnership of George F. Smith & Co. be adjudged insolvent. An adjudication to this effect was given on the seventeenth day of November, 1896, upon which day Scoville, plaintiff herein, was appointed assignee. Meanwhile, by order and permission of the court in insolvency, Anderson was allowed to prosecute his action then pending in the superior court of Alameda county to a judgment, and he did so. He subsequently caused execution to be issued upon his judgment, and the land in San Francisco upon which the attachment had been levied was sold on the first day of September, 1896, Anderson himself being the purchaser at the sale. On the fifth day of September, 1897, he received his sheriff's deed for the land. Upon the twenty-ninth day of May, 1897, Scoville, as assignee of the insolvent copartnership, commenced this action to quiet title to the land, and from the judgment and decree so quieting the assignee's title Anderson appeals.

Upon his appeal he presents two points for consideration: 1. That Scoville's action is a collateral attack upon the order of the superior court granting Anderson permission to prosecute his action, and upon the judgment and execution of the superior court of Alameda county; and 2. That the attachment in the action prosecuted in the superior court of Alameda county was levied more than one month prior to the initiation of the insolvency proceedings.

It is conceded that the fee of the property was in William Schmidt, and that all of Schmidt's title except as affected by the lien of the attachment passed to the assignee under his appointment, so that the assignee took title by relation as of the twenty-fourth day of February, 1896. (Insolvent Act 1895, sec. 21; *Dambmann v. White*, 48 Cal. 450.) It is likewise

unquestioned that an attachment of the property of an insolvent is dissolved by operation of law if levied within one month prior to the commencement of the proceedings in insolvency. (Insolvent Act 1895, sec. 21; *Cerf v. Oaks*, 59 Cal. 135.) Section 49 of the Insolvent Act provides that if the amount due the creditors is in dispute, the suit by leave of court in insolvency may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proven in insolvency, but execution shall be stayed. It was in pursuance of this provision of the Insolvent Act that the order of the court in insolvency was made permitting Anderson to prosecute his suit to judgment, and it does not appear that the order was any broader or went any further than this. In the present action there is no controversy over, and consequently no attack direct or collateral upon, the sufficiency of the judgment nor the justice of the sum awarded. The respondent, assignee, admits Anderson's right to prosecute his action to final judgment. His contention is that the attachment lien was dissolved by operation of law in virtue of the fact that insolvency proceedings were commenced within one month next after the levy of the attachment; that the attachment lien being dissolved, it was not merged into the judgment obtained by Anderson, and that the assignee's title acquired upon the twenty-fourth day of February, 1896, was freed from the lien of the attachment, and absolutely perfect; that, notwithstanding this, the existence of the sheriff's deed constituted a cloud upon his title which he is entitled to have removed by a court of equity. Upon the other hand, respondent concedes that if the attachment was filed more than one month before the commencement of the insolvency proceedings, it was and continued to be a valid, subsisting lien upon the property, antedating and superior to his own title, a lien that was subsequently properly disposed of by execution sale, and that the question, therefore, is not at all one of collateral attack upon a judgment, the validity of which is not assailed, and the sufficiency of which is not in question, but is the single one, namely, Did the assignee on the twenty-fourth day of February, 1896, acquire a title to the real property described in the complaint free of the lien of the attachment im-

CXXXI. Cal.—38

posed upon said property by the levy of January 24, 1896? This position is sound.

Respondent relies upon the provisions of section 21 of the Insolvent Act, declaring that the "assignment shall dissolve any attachment made within a month next preceding the commencement of the insolvency proceedings." Appellant, recognizing that the validity or invalidity of his attachment lien depends upon this section, insists that in the computation and measurement of time, to protect his private right, the law will regard the fractions of a day, and that between 1:30 o'clock in the afternoon of January 24, 1896, and 4:30 o'clock in the afternoon of February 24, 1896, more than one month had elapsed, and that his attachment lien therefore was not dissolved. In measuring and computing time it has been the rule from a very early day in this state to exclude the day upon which the event happened, a rule and method of computation differing from that of the earlier English practice, which was the inclusive method, under which the time began to run upon the day of the happening of the event. Thus, while in *People v. Clark*, 1 Cal. 408, it is said that the general rule seems to be that in the computation of time from an act done, the day of the act is to be computed, in the next case of *Price v. Whitman*, 8 Cal. 412, the exclusive rule is adopted, and it is said: "Of late the general rule of construction seems to have been to exclude the first day"; and in *Iron Mountain Co. v. Haight*, 39 Cal. 540, where it was sought to have the court return to the earlier or inclusive rule, it is said: "We think we are bound by the gravest considerations of public order and security not at this late day to disturb the rule so distinctly and authoritatively settled." Finally, the matter was definitively put at rest by a provision placed in the codes to the effect that "the time in which any act provided by law is to be done is computed by excluding the first day and including the last." (Code Civ. Proc., sec. 12; Civ. Code, sec. 10; Pol. Code, sec. 12.) Still further as bearing upon the question, we have in section 14, subdivision 4, of the Civil Code the provision that the word "month" means a calendar month, unless otherwise expressed. Applying these fixed rules, it is demonstrated that if the act from which time is to run be considered the commencement of the insolvency

proceedings, then the twenty-fourth day of February is excluded, and, counting backward one calendar month, there is included all the twenty-fourth day of January, upon which day the attachment was levied, and the attachment consequently was levied within the month. The same result is reached if the initiatory act be considered as the levying of the attachment upon the twenty-fourth day of January, by which method the twenty-fourth day of January is excluded from computation, and the month runs to and includes all of the twenty-fourth day of February. To this, however, objection is made that the filing of the insolvency proceedings was not within the meaning of section 12 of the Code of Civil Procedure, "an act provided by law to be done"; but this language does not mean that it is an act the doing of which is commanded by law. It applies equally to all acts permitted by law, of which certainly this is one. The analogy in the case of the time allowed to respond to a summons, as to which it is not doubted that the statute applies, is perfect. The party upon whom service is made is allowed ten days in which to plead. There is no compulsion upon him to plead. He is merely permitted to do so if he wishes. It is an act provided by law to be done.

But it is still further insisted by appellant that having due regard to the private rights of the parties litigant, the law will regard fractions of a day. The principle here involved was expressed in *Iron Mountain Co. v. Haight, supra,* as follows: "Fractions of days are not to be noticed unless in a case in which it becomes necessary to ascertain the relative order of occurrences happening on the same day." The supreme court of the United States in *National Bank v. Burkhardt,* 100 U. S. 689, and in *Louisville v. Savings Bank,* 104 U. S. 472, reviews with much care the authorities and the learning of the law upon the question, and voices its conclusion as follows: "For most purposes the law regards the entire day as an indivisible unit, but when the priority of one legal right over another depending upon the order of events occurring upon the same day is involved, this rule is necessarily departed from." Appellant places reliance upon the language of *Maine v. Gilman,* 11 Fed. Rep. 214, quoted with approval by this court in *Hoyt v. San Francisco R. R. Co.,* 87 Cal. 610, where it is said: "It is in-

sisted that the law knows no fractions of a day, but this ancient maxim is now chiefly known by its exceptions. When private rights depend upon it, the courts inquire into the hour at which an act was done, or a decree was entered, or an attachment was laid, or any title accrued." But the principle underlying this language is easily discerned. Where the law requires or permits an act to be done within a statutory period of time or number of days, the question becomes one simply of the measurement of time, and so measuring time the first day is excluded, all of the last day included, and fractions of days are totally and universally disregarded. The acting party has all of the last day within which to proceed. But where the question before the court is one where the determination of private rights depends upon the order in point of time of the performance of two or more acts usually done upon the same day, the courts are, of necessity, required to find and fix the priority and sequence of these events, and to this end always, as of need they must, consider parts and fractions of days. No one, for example, would consider that a defendant, upon whom a summons had been served at 10 o'clock in the morning, was in default because his answer was not filed until 4 o'clock of the afternoon of the tenth day. Upon the other hand, where the question is that of priority of time in the levy of two or more attachments, the recording of deeds, and the like, the actual time of performance becomes the essential question, and fractions of days are scrupulously regarded. Of this latter class of cases was that of *Hoyt v. San Francisco R. R. Co., supra,* the facts being that a rule of this court provided that if the transcript was on file when notice was given of a motion to dismiss the appeal for failure to file, that fact should be a sufficient answer to the motion. The transcript in that case was filed upon the day the motion was served, but some hours after service. In resisting the motion to dismiss, it was urged that the law would not regard fractions of a day, and that the appellant was in time, therefore, if his transcript was filed at any hour upon the day of the service of the notice. It was in answer to this that the language of the federal court above quoted was employed. It was thus not a question where fractions of a day were considered in the measurement of time, but merely

where they were considered to determine the priority of the happening of one of two acts. *Price v. Whitman, supra,* and *Iron Mountain Co. v. Haight, supra,* were both cases where the measurement of time was under consideration. In both it was urged that fractions of days should be regarded. In both the question was considered and the fractions rejected. The other cases relied upon by appellant will be found upon examination to be those where the question was not of measurement of time, but a determination as to the priority of the order of events occurring on the same day.

The case at bar, then, involves the question of the measurement of time, as to which it is clear that the law will not regard fractions of days, and that the attachment lien was, therefore, avoided by the initiation of the insolvency proceedings upon the twenty-fourth day of February. The same conclusion was reached by the supreme court of Connecticut in a parallel case arising under its Insolvent Act. (*Miner v. Goodyear etc. Mfg. Co.,* 62 Conn. 410.)

The judgment appealed from is therefore affirmed.

Temple, J., and McFarland, J., concurred.