## Lewis, Secretary of State, et al. v. Cozine et al.

(Decided June 13, 1930.)

J. W. CAMMACK, Attorney General; J. M. GILBERT, Assistant Attorney General; C. C. TURNER and W. B. ARDERY for appellants.

EDWARD C. O'REAR and E. H. DAVIS for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The purpose of this suit is to test the validity of the veto by the Governor of House Bill No. 396, known as the General Registration Law, enacted by the General Assembly at its 1930 session.

782

The bill was presented to the Governor on Monday, March 10, 1930. The General Assembly adjourned sine die at midnight on March 20, 1930. On March 21, 1930, the Governor vetoed the bill and the veto message was spread upon the register kept by the secretary of state. This action was instituted by B. B. Cozine, as a citizen and taxpayer, against Ella Lewis, secretary of state of Kentucky, and Charles A. Hardin and Robert Hunter, chairmen of the respective executive committees of the Democratic and Republican parties. He sought an injunction against the defendants to prevent them from meeting and attempting to put into effect the provisions of the bill on the ground that the Governor had vetoed the bill within the time allowed by law. The defendants, Ella Lewis, secretary of state, and Charles A. Hardin, chairman of the executive committee of the Democratic party of the State of Kentucky, filed a demurrer to the petition and without waiving same filed an answer, the first pragraph of which was a traverse of a part of the allegations of the petition. In the second paragraph of the answer it was alleged that the bill was presented to the Governor on March 10, 1930, and that the Legislature remained in session until and including March 20, 1930; that the Governor attempted to veto the bill on March 21, which was after the time allowed him by law; and that by reason of his failure to act on the bill not later than March 20, his veto was void and ineffectual and the act became a law notwithstanding his attempted veto. The defendant Robert W. Hunter, chairman of the executive committee of the Republican party of the State of Kentucky, entered his appearance and asked that he be made a party plaintiff instead of defendant. The following stipulation was entered into between the parties:

"It is stipulated by the parties hereto that the defendants, Ella Lewis and Charles A. Hardin do not rely and will not rely in the trial of this case upon the fact alleged in their answer that House Bill No. 396 was delivered or attempted to be delivered to the Governor on March 8, 1930.

"It is further stipulated that the said original of House Bill No. 396 mentioned in the petition filed therewith as an exhibit was, as duly authenticated by the signatures of the presiding officer of the two Houses of the General Assembly, presented to the Governor on Monday, March 10, 1930, 2:15 P. M., as

shown by the receipt endorsed thereon by E. M. Heavrin, secretary of the Governor, and it is agreed that the delivery of the said bill to said secretary is equivalent to delivery thereof to the Governor.''

The case was submitted on the pleadings and stipulation. The chancellor was of the opinion that the Governor exercised his right of veto within the time allowed by law and that the act failed to become a law because of the veto. Judgment was entered granting the relief sought in the petition. The defendants have appealed.

Section 88 of the Constitution, in so far as it is pertinent to the question here involved, reads:

''If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the general assembly, by their adjournment, prevent its return, in which case it shall be a law, unless disapproved by him within ten days after the adjournment, in which case his veto message shall be spread upon the register kept by the secretary of state.''

The sole question to be determined is whether or not March 10, the day on which the bill was presented to the Governor, shall be included as one of the ten days within which the Governor must act. If it is included, he acted too late and the act became law on March 20, 1930. If the day the bill was presented to the Governor is excluded, the veto was timely and the act never went into effect.

Appellants rely upon a long line of decisions of this court in which it has been held that where time is to be computed from an act or event, the day of the act or event is to be included; but if the time is to be computed from a specific day, and not from the occurrence of an event on that day, the first day must be excluded. A collection of the more recent cases construing various sections of the statutes and code will be found in Verda Harlan Coal Co. v. Harlan National Bank, 229 Ky. 565, 17 S. W. (2d) 718. Some of the earlier cases on the same point are: Chiles v. Smith's Heirs, 13 B. Mon. 460; Batman v. Megowan, 1 Metc. 533; Long v. Hughes, 1 Duv. 387; White v. Crutcher, 1 Bush 472; Newton v. Ogden,

126 Ky. 101, 102 S. W. 865, 31 Ky. Law Rep. 549; Louisville Railway Co. v. Wellington, 137 Ky. 719, 126 S. W. 370, 128 S. W. 1077; Meridian Life Insurance Co. v. Milam, 172 Ky. 75, 188 S. W. 879, L. R. A. 1917B, 103.

This is the first case in this state in which the construction of the constitutional provision involving the application of a rule for the computation of time has been presented. Appellants contend that the rule is settled in Kentucky as applying to statutory and code provisions and, in certain instances, to private contracts, and that therefore it should be applied to the provision of the Constitution here involved.

The rule of construction as applied to statutes is well settled in this jurisdiction and should not be changed except by legislative enactment. However, unless there are impelling reasons for applying the same rule of construction to the Constitution, we are unwilling to so extend it. The earlier English cases held that where the computation is to be made from an act or event, the day of the act or event is to be included, but in the later English cases this rule of construction has been repudiated and the rule excluding the first day of the period has been adopted. Ex parte Fallon, 5 T. R. 283. This later rule has been adopted by the Supreme Court of the United States and a majority of the state courts. In a few states the rule followed in this state has been adopted. However, in computing the period of time within which the chief executive of a state may approve an act of the Legislature presented to him, or in which the act, if not returned, will become effective, the rule universally followed is that the day of presentation is to be excluded and the last day included. Price v. Whitman, 8 Cal. 412; Iron Mountain Co. v. Haight, 39 Cal. 540; Croissant v. De Sota Improvement Co., 87 Fla. 530, 101 So. 37; State v. Sessions, 84 Kan. 856, 115 P. 641, 644 Ann. Cas. 1912A, 796; State v. Michel, 52 La. Ann. 936, 27 So. 565, 49 L. R. A. 218, 78 Am. St. Rep. 364; Carter v. Henry, 87 Miss. 411, 39 So. 690, 6 Ann. Cas. 715; Beaudean v. City of Cape Girardeau, 71 Mo. 392; Corwin v. Comptroller General, 6 S. C. 390; People v. Hatch, 33 Ill. 9; In re Senate Resolution, 9 Colo. 632, 21 P. 475. Constitutional provisions similar to the one under consideration contemplate that the Governor, in approving or disapproving bills submitted to him, shall act only after due

deliberation and a court, in construing such a provision, must keep in view the duty imposed upon the executive. In 26 R. C. L. 747, the rule is thus stated:

"In computing the period of time within which the chief executive of a state may approve an act of the legislature presented to him, or within which the act, if not returned, will become law, the rule, in the absence of statute, is that the day of presentation is to be excluded, and the last day included, for when a certain time for deliberation is given the exclusive rule should be adopted."

In 25 R. C. L. p. 890, the text reads:

"In computing the number of days within which the executive must act on bills presented to him, a 'day' begins at twelve o'clock midnight and extends through twenty-four hours to the next twelve o'clock midnight. The day of presentation is to be excluded and the last day of the specified period included."

Constitutional provisions of other states prescribing the number of days within which the Governor must either approve or veto a bill, in which the rule excluding the day on which the bill is presented to him is applied, are similar in all respects to section 88 of our Constitution and apparently have been modeled after section 7, article 1, of the Federal Constitution, which reads: "If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law." The provision in section 88 of our present Constitution that, "If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it," appears in the same language in the first Constitution adopted in 1792. It also appears in the second and third Constitutions adopted in 1799 and 1850, respectively. The framers of the first Constitution, in copying the language of the Federal Constitution, must have done so in the light of the construction placed upon the federal instrument by its framers. In State v. Session, supra, the follow-

ing account is given of the debate on this provision of the Federal Constitution in the Constitutional Convention:

"In the federal Constitution the period for the consideration of a bill by the President is limited to ten days after it is presented to him. The section containing this clause was debated in the constitutional convention, and finally, when the report of the committee on style was being compared, Mr. Madison moved to insert the words 'the day on which' between the words 'after' and 'it,' but Mr. Morris said the amendment was unnecessary, as the law knows no fractions of days. Members grew impatient and the motion was lost. The Growth of the Constitution by Wm. M. Meigs, in 8 Fed. Stat. Anno. 141. Had the amendment been made, the clause would have been, 'if any bill shall not be returned by the president within ten days after (the day on which) it shall be presented to him the same shall become a law. . . . The proposed amendment is shown in the parentheses. In this form the day of presentation would have been excluded without question, but it seems that the convention was satisfied with Mr. Morris's suggestion that the amendment was unnecessary to give it this meaning."

It was no doubt intended by the framers of the Constitution that the Governor should have ten days for deliberation after a bill is presented to him. The exclusion of Sundays gives added force to the argument for the view that the language used by them was then generally understood as excluding the first day of the period. It is argued, however, that the present Constitution, of which section 88 is a part, was adopted in 1891 and the rule for computing time had been in force for a long period of time, and therefore the language used, making it the duty of the Governor to return the bill within ten days after it is presented to him, was adopted with the rules for computing time before the Constitutional Convention, and that this provision of the Constitution must have been written with the existing rule, as applied to statutes, in mind. However, as we have seen, this provision is in the same language as appeared in the three preceding Constitutions, and the first Constitution was adopted at a time and under circumstances that would

indicate the members of the convention intended to exclude the day on which the bill was presented to the Governor. We are inclined to the opinion that the sounder view is that this provision of the first Constitution was carried into the subsequent Constitutions with the construction that must have been placed thereon by the framers of the first Constitution.

The Governor is not only intrusted with the enforcement of the laws, but, by section 88 of our Constitution, he is granted a voice in their adoption. To prevent the evils of hasty, imprudent legislation, the veto power was conferred upon him in order that he might point out his objections and the bill be reconsidered. It is his duty to carefully consider and calmly investigate all legislative acts presented to him and to call the attention of the Legislature to inadvertences or mistakes it may have committed through want of proper consideration, and to point out the evil effects likely to result from the adoption of acts submitted to him. In considering the provision of the Federal Constitution, which confers the veto power upon the President, the Supreme Court in The Okanogan Indian Tribe v. United States, 279 U. S. 655, 49 S. Ct. 463, 465, 73 L. Ed. 894, 64 A. L. R. 1434, said:

"The Constitution in giving the President a qualified negative over legislation—commonly called veto—entrusts him with an authority and imposes upon him an obligation that are of the highest importance, in the execution of which it is made his duty not only to sign bills that he approves in order that they may become law, but to return bills that he disapproves, with his objections, in order that they may be reconsidered by Congress. The faithful and effective exercise of this momentous duty necessarily requires time in which the President may carefully examine and consider a bill and determine, after due deliberation, whether he should approve or disapprove it, and if he disapproves it, formulate his objections for the consideration of Congress. To that end a specified time is given, after the bill has been presented to him, in which he may examine its provisions and either approve it or return it, not approved, for reconsideration."

The purpose of section 88 of our Constitution was to give the Governor ten days for deliberation after a

788

bill is presented to him. This necessarily means ten full days. The time could have been limited further. Some state Constitutions limit the time within which a bill must be returned by the Governor to five days and some to three days. It could have been limited to one day. Under the construction contended for by appellants, the Governor, assuming the Constitution had fixed one day instead of ten days, would be required to act on the day the bill is presented. If a bill should be presented on the last minute of the day, the rule would still apply and no time would remain for deliberation. Since it was intended that the Governor should act after due deliberation and the exercise of the veto power is more than the performance of a mere mechanical act, it is reasonable to presume that the members of the convention, in adopting section 88 of the Constitution, contemplated ten full days.

It follows that March 10, the day the bill was presented to the Governor, must be excluded in computing the time within which he was required to act, and, excluding the intervening Sunday, his veto of House Bill No. 396 on March 21 was within the time allowed by law and a valid exercise of his power.

Judgment affirmed.

The whole court sitting.