## Pinson et al. v. Bentley et al.

March 5, 1943.

Jean L. Auxier for appellants.

P. B. Stratton, E. D. Stephenson and V. R. Bentley for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Earl L. Pinson and W. W. Pinson owned adjoining tracts of land containing respectively 892.29 acres and 941.40 acres. On January 4, 1937, these tracts were sold in satisfaction of various judgments against the two brothers. The lands were appraised at $42,132.00, and W. V. Young became the purchaser for $22,000. Thereafter, the equities of redemption were sold under an execution to Robert Williams, a judgment creditor, who, on December 16, 1937, assigned his bid to R. S. Johnson and John A. Bentley. On December 18, 1937, the Pinsons filed separate motions to quash the executions and set aside the sale of the equities of redemption. The motions were overruled, and appeals were prosecuted to this Court. Young, the purchaser at the decretal sale, had agreed with the Pinsons to extend the time in which the Pinsons might exercise their rights of redemption, and the final agreements between them extended that period "to and including the 15th day after the decision of the Court of Appeals, upon their appeal herein, shall have become final." On June 21, 1941, this Court held that because the equities of redemption of the respective execution debtors in their respective tracts had not been levied upon and sold separately, the sale of their equities of redemption was void, saying:

"It follows that the chancellor erred when he did not quash the executions and did not set aside the sheriff's report of sale. As there was no valid sale of the equities of redemption, the chancellor erred in setting aside the agreed order wherein W. V. Young granted to the Pinsons an extension until fifteen days after the decision on this appeal becomes final within which they may redeem." See Pinson et al. v. Williams et al. (2 cases), 288 Ky. 314, 155 S. W. (2d) 869, 871.

Before the expiration of six months from the de-

cretal sale, Bentley and Johnson tendered to Young the amount of his bid with interest, and when the tender was declined, paid the money ($24,035) to the clerk of the Court. Young, who had discharged the first of his three purchase money bonds, was reimbursed, and the balance, $15,476.75, was delivered to the master commissioner. The disposition of this balance does not appear, but it is presumable that it was disbursed to the creditors of the Pinson brothers. Young excepted to the Court's order and prayed an appeal to this Court. He died on December 30, 1938, and the appeal was never perfected. On January 28, 1938, the Circuit Court sustained a motion of Johnson and Bentley to cancel the extension of time for redemption granted by Young to the Pinsons, and directed the Commissioner to convey to Johnson and Bentley the lands in question. On February 8, 1938, the Commissioner executed and delivered the conveyance directed by the order of January 28; and thereafter, Johnson and Bentley procured a writ of possession under which the Pinsons were ejected, and Johnson and Bentley placed in possession. Johnson died intestate on November 21, 1940, after having conveyed his interest in the property to his children, the appellees, Dr. J. K. Johnson and Helen Epperson.

The mandate of this Court directing the Circuit Court to enter a judgment consistent with the opinion of June 21, 1941, was issued on December 12, 1941, and the judgment thereafter entered setting aside the execution and the subsequent proceedings thereunder, including the sale of the rights of redemption and other orders of the Court carrying the same into effect, contained provisions validating the final extension granted by Young to the Pinsons, and adjudged that the right of each of them to redeem was enlarged and extended "to and including the 15th day after said decision of the Court of Appeals herein became final." On the night of December 27, 1941, the Pinsons obtained from K. J. Day, Dr. A. W. Thompson, F. L. Rice, and J. T. Billiter $22,-000 and paid it to the Clerk of the Court after filing an affidavit in which they set forth their ownership of the equities of redemption in their respective tracts, and that Young, the purchaser at the decretal sale, was dead. Obviously, for the purpose of securing the loan, they executed an absolute deed to the four men named, who, in turn, executed to the Pinsons' attorney an option to

purchase the property within six months for $26,000. Thereafter, various motions were filed in the several actions by the contesting parties, seeking on the one hand to establish the validity of the redemption, and on the other, to have it adjudged that it was ineffective. On March 12, 1942, the Pinsons, their respective wives, and the grantees in the deed above referred to, instituted a declaratory judgment action to have their rights determined, joining as parties defendant Bentley, the grantees of Johnson, the execution creditors who had caused the sale of the equities of redemption, and the heirs, widow, and administrator of Young. The specific relief sought was an adjudication that the redemption on December 27, 1941, was timely and effective, that the proceedings and instruments executed pursuant thereto purporting to vest title in Bentley and Johnson and their successors be adjudged void, and that the grantees under the Pinson deed of December 27, 1941, be adjudged entitled to the possession of the properties. The declaratory judgment suit was consolidated with the original action, issues were joined, and proof taken. The Chancellor, without passing upon objections urged in opposition to the validity of the redemption, other than that it was attempted too late, held that the right to redeem expired at midnight of December 26, 1941, and adjudged that neither the Pinsons nor their grantees had any interest in the properties. Hence this appeal.

Notwithstanding the earnestness with which other objections to the validity of the redemption are urged by appellees, we agree with the Chancellor that the only real issue involved was its timeliness. In our former opinion we held that the sale of the Pinsons' rights of redemption was void, from which it follows that Johnson and Bentley acquired nothing from their purchase and had no right to redeem. As successors to Young, who was compelled by the Circuit Court's judgment to accept a return of the money he had paid in part satisfaction of his bid and thereby became an involuntary assignor, they were, perhaps, entitled to insist that the Pinsons exercise the right of redemption, with which they had never parted, within the time granted them by Young. But they were not entitled to insist on a strict compliance with the redemption statute, KRS 426.530 (KS 2364) since it is obvious that the Statute does not cover the involved situation presented. Hence the Pin-

494

sons were not required to pay the amount bid by Young plus 10% interest, but only such an amount as the equities of the case demanded. Certainly these would not include a premium to Johnson and Bentley for their unauthorized act. Moreover the evidence indicates that Johnson and Bentley, during the period of their possession of the properties, collected royalties on minerals taken therefrom, which together with the $22,000 paid in redemption, will reimburse them for the $24,035 which they paid into Court, as well as for their expenditures for taxes and improvements after they have been charged a reasonable rental for the use and occupation of the properties. If, on a proper accounting this proves not to be so, equity doubtless would award them a lien on the land for the unsatisfied balance, if this can be done without prejudice to the rights of bona fide purchasers without notice of their claims.

Similar considerations make it unnecessary to discuss appellees' contention that a tender should have been made to Bentley and Johnson, or their representatives, before the money was paid to the Clerk of the Court, and that the relationship of the Pinsons and their grantees to the transaction, created by the conveyance of December 27, 1941, or otherwise, precluded them from exercising the right of redemption, even though the time for its exercise was extended to midnight of that date.

This leaves for determination the single question: When did the right of redemption as extended by the contract between Young and the Pinsons, and confirmed by the Court's judgment, expire? The Chancellor, the appellees insist properly, applied the ancient English rule abandoned by the courts of that country before it was adopted by us in Chiles v. Smith's Heirs, 13 B. Mon. 460, that where, by statute, computation was to be made from the time of an act done, the day on which the act was done should be included. Treating December 12th as one of the fifteen days allowed for redemption, it is obvious that the time expired at midnight of the 26th. Notwithstanding the fact that the ruling in Chiles v. Smith's Heirs was an apparently unjustified departure from a long line of decisions applying what is now known as the modern rule, by which the day of the act or event is excluded from the computation and the last day of the specified period included, the old English rule has be-

come so firmly embodied in our jurisprudence as a guide for intepreting Statutory and Code provisions prescribing time limitations, that the Legislature, rather than this Court should be called upon to change it. See Lewis v. Cozine, 234 Ky. 781, 29 S. W. (2d) 34, in which this Court refused to apply the rule in construing provisions of the Constitution. But this fact does not compel us to apply it where the language employed denotes a contrary intent and its application would result in an absurdity. Had the contract between Young and the Pinsons granting the extension of the time for redemption, or the judgment validating it, extended the time for redemption "for 15 days" after the decision of the former appeal became final, or provided that the redemption must be effected "within 15 days after" that event, the prevalent rule of construction would have precluded a redemption after midnight of the 26th. But the contract and judgment extended the time for redemption "to and including the 15th day after" the decision "shall have become final"; and, unless we were prepared to say that had the contract extended the time "to and including the first day after the decision shall have become final", the time for redemption would, nevertheless, have expired at midnight of the 12th, the day the decision became final, we perceive no escape from the conclusion that the extension actually granted included the 27th. As well stated by appellants' counsel:

"The numbers used do not give a quantity of time measured in days. The numbers used are not numerals at all, they are the sort of numbers called ordinals. The form of their expression does not give a measure of time but identifies a certain day and includes it as the last day to and including which a right previously existing shall continue. We may hold therefore that even though the old distinction prevailed in Kentucky as to private contracts still the use of ordinal numerals instead of cardinal would require computing from the day of the event, since the ordinal day points to a specific solar day and necessarily implies that it is a certain one of a succession of such days beginning after an event.

"The use of the other words in the phrase strengthens this interpretation; 'to' a day by the only sense the word possesses implies a transition which leaves one unit and approaches another. This

could only be satisfied in this case by identifying one of a consecutive series of days beginning after an event. Hence, although by the legal fiction under which the old distinction was justified, an act on a certain day was considered coincident with the first moment of that day and one day after the act could be practically satisfied by the twenty-four hours of the day on which the act occurred, the expression 'to the first day' after the act could not be so satisfied since the preposition 'to' and the ordinal numeral require a transition to the next day which begins after the act.

"This is further strengthened by the word 'including.' The closing day for the right contracted did not end with the nearer limit, but with the farther limit, of the fifteenth of the series of days which began after the act."

Judgment reversed for proceedings consistent with this opinion.