## Pinson et al. v. Bentley et al.

Oct. 17, 1944

Jean L. Auxier for appellants.

P. B. Stratton for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CAMMACK —Affirming in part, reversing in part.

Reference to the cases of Pinson et al. v. Williams, 288 Ky. 314, 155 S. W. 2d 869, and Pinson et al. v. Bentley et al., 293 Ky. 490, 169 S. W. 2d 305, 306, will furnish the background of the present controversy between the parties. In the first case we held the sale of the Pinsons' respective equities of redemption was void. In the second case we held the Pinsons deposited their redemption money with the clerk of the Pike Circuit Court within the extension of time allowed them by the purchaser (December 27, 1941) at the original sale of their lands in 1937. Bentley and his associates deposited their money with the clerk December 8, 1937. In the course of the opinion in the second case it was said: "In our former opinion we held that the sale of the Pinsons' rights of redemption was void, from which it follows that Johnson and Bentley acquired nothing from their purchase and had no right to redeem. As successors to Young, who was compelled by the Circuit Court's judgment to accept a return of the money he had paid in part satisfaction of his bid and thereby became an involuntary assignor, they were, perhaps, entitled to insist that the Pinsons exercise the right of redemption, with which they had never parted, within the time granted them by Young. But they were not entitled to insist on a strict compliance with the redemption statute, KRS 426.530 (KS 2364) since it is obvious that the Statute does not cover the involved situation presented. Hence the Pin-

sons were not required to pay the amount bid by Young plus 10% interest, but only such an amount as the equities of the case demanded. Certainly these would not include a premium to Johnson and Bentley for their unauthorized act. Moreover the evidence indicates that Johnson and Bentley, during the period of their possession of the properties, collected royalties on minerals taken therefrom, which together with the $22,000 paid in redemption, will reimburse them for the $24,035 which they paid into Court, as well as for their expenditures for taxes and improvements after they have been charged a reasonable rental for the use and occupation of the properties. If, on a proper accounting, this proves not to be so, equity doubtless would award them a lien on the land for the unsatisfied balance, if this can be done without prejudice to the rights of bona fide purchasers without notice of their claims.''

In the judgment from which this appeal is prosecuted the appellees were allowed interest from the date they deposited their money with the clerk (December 8, 1937) until the date of the judgment; taxes and improvements were allowed; they were charged with a rental of $700 per year for the use and occupation of the properties; and no charge was made for waste. On this appeal it was insisted the allowance of interest was error; the rental should have been fixed at not less than $1200 per year; and an allowance should have been made for waste.

While very able arguments are made in support of the second and third contentions, our examination of the evidence leaves us with no more than a doubt as to the correctness of the chancellor's findings, so we will not disturb them. Potter v. Potter's Ex'r, 293 Ky. 606, 169 S. W. 2d 818.

The first contention presents a more serious question. In the recent case of Townsend v. Tipton, 289 Ky. 766, 160 S. W. 2d 161, 164, 142 A. L. R. 306, it was said: ''Purchasers at judicial sales are and should be encouraged. Where one has become a purchaser and paid for the property he should be protected if the sale be declared void, particularly if the party receiving the money was instrumental in causing that result. If the purchaser in good faith has paid his money for its proper application and distribution and he fails through no fault of his own to obtain title, equity demands that he

be made whole by being restored as nearly as possible without injury to the same situation he would have occupied had there been no sale. 10 R. C. L. 1343; 16 R. C. L. 103. This can be done only by rescinding everything that has been done. Obviously, complete rescission cannot be accomplished without returning an innocent purchaser's money. Limiting his relief to subrogation may be inadequate or produce great delay. George Hogg & Son v. Budnick, 227 Ky. 602, 13 S. W. 2d 756. Restitution was ordered in Forst v. Davis, 101 Ky. 343, 41 S. W. 27. And in Hall v. Dineen, 83 S. W. 120, 26 Ky. Law Rep. 1017, in addition to the recovery of money paid and interest, the purchaser was held entitled to taxes paid and the cost of improvements of the property and to a lien for security.''

Reference to the Annotation following the foregoing case will show that as a general proposition the parties will be restored as nearly as practicable to their original positions, in the absence of extenuating circumstances. There must be good faith on the part of the purchaser. It is to be noted that in the case of Hall v. Dineen, 83 S. W. 120, 26 Ky. Law Rep. 1017, referred to in the quotation from the Townsend case, the purchaser was allowed to recover the money paid with interest, in addition to taxes and the cost of improvements. In that case a part of the purchase money was actually paid before the validity of the sale was attacked by the purchaser, so the original owner, or whoever was entitled to it, had the use of a part of the purchase money. In the case at bar none of the money paid into court by the appellees went into the hands of the appellants, who were vigorously contending the sale was void. In this connection it may be said that Bentley and the father of his present associates had originally agreed to advance money to the Pinsons to redeem the property from Young, the original purchaser. As pointed out in the second appeal of this case, Bentley and Johnson should not be allowed a premium ''for their unauthorized act.'' Furthermore, as may be noted from the foregoing quotation from the opinion in that case, we did not direct the allowance of interest other than an amount ''as the equities of the case demand.'' We have reached the conclusion that no interest should be allowed. We have reached this conclusion after reviewing all the history of the litigation, the low rental with which the appellees

were charged, and the liberal allowance for improvements; and, also, after considering the fact that their conduct has largely been responsible for this protracted and long drawn out litigation. Furthermore, the Pinsons were doubtless required to pay interest on the redemption money which they paid into the hands of the clerk in December, 1941. We are not without authority to support this conclusion. The case of Wile et ux. v. Sweeney & Taylor, 4 Ky. Op. 278, is quite similar to the one at bar, aside from the question of "extenuating circumstances." Following a void sale it was directed that the case should again be referred to the commissioner with directions to credit the purchaser for all sums actually paid by him "for taxes, repairs and improvements, but no interest will be charged by them except for the taxes." The purchaser was also charged with the fair rental value of the property.

We do not view our conclusion in the case at bar as being inconsistent with the rulings in the Hall case and those to like effect, because it stands to reason that a good faith purchaser at a void judicial sale, who, through no fault of his own, pays a part or all of the purchase money of which the original owner, or whoever was entitled to it, has had the use, could not be restored to his original position other than through the return of his money plus interest.

It follows the judgment should be affirmed on the questions of rent and waste, and reversed on the question of interest, with directions for the entry of a judgment on that phase of the case consistent with this opinion.