CASE 27—PETITION ORDINARY—FEBRUARY 18.

# Seibert's Assignee v. Ragsdale.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. EVIDENCE—ADMISSIBILITY OF LETTER PRESS COPIES.—Letter press copies are secondary evidence, and before they can be properly used, a foundation must be properly laid for their introduction in the usual and ordinary way.

2. PARTNERSHIP—ADVANCEMENT TO FIRM—INTEREST.—One partner has no right to charge the other partner with interest on money advanced to the firm and used in the partnership business, unless there be an agreement to that effect; nor has a partner the right to interest on the balance, from time to time, in the partnership accounts, before a general settlement or dissolution, in the absence of a special agreement.

3. INSTRUCTIONS—REVERSIBLE ERROR.—The refusal of the court to give instructions as to interest to which a plaintiff was entitled, is not reversible error where the jury found there was no liability upon the part of the defendant.

HUNTER WOOD & SON AND JOHN FELAND & SON FOR APPELLANT.

1. Letter press copies are not secondary evidence; they show for themselves that they are copies, that they are taken from the books, and while they may be imperfect it is impossible for them to be incorrect, or to contain any word or syllable not in the originals; in this case those offered in evidence show that they are not imperfect, and not blurred or defaced, and the court erred in refusing to permit them to be read.    Goodrich v. Weston, 102 Mass., 362; Greenleaf on Evidence, vol. 1, sec. 558 and notes.

2. A partner who advances money to the firm is entitled to interest thereon; the general rule is that whenever one man allows another the use of his money, and he accepts it and gets the benefit of it, the law will imply a contract upon his part to pay therefor.    Parsons on Partnerships, 4th ed., secs. 155 and 166; German Mining Co., *ex parte*, 27 Eng. Law & Eq., 159.

3. While partners are not entitled to interest on money voluntarily furnished to the firm, unless the advancement is purely voluntary, interest will be allowed to the partner funishing the same. In this case there were peculiar circumstances making it absolutely necessary for Seibert to furnish the money. Ashbrook v. Ashbrook, 16 Ky. Law Rep., 593.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This action was instituted at law by appellant as assignee of Henry Seibert for the recovery of a large balance alleged to be due by appellee to his assignor, growing out of. the settlement of a partnership which had run through a course of years. Appellee lived in Hopkinsville, and, according to the allegations of the petition, was to purchase tobacco in that neighborhood and ship it to Seibert, and the latter was to obtain the money to pay for the purchases on bills drawn against the invoices and to attend to the selling. Neither party was to charge anything for his services, and the profits and losses were to be equally divided between them.

Appellee, on the contrary, insists that he had been employed by appellant's assignor for a good many years upon commission to purchase tobacco for him in the neighborhood of Hopkinsville; that these purchases had been uniformly profitable, and that about the year 1886 appellant's assignor proposed to him that instead of paying him a commission for his services, if he would give his time, attention and talents to the purchase of tobacco and be at all expense connected therewith, he (Seibert) would furnish all the money for the purchases and be at all expense in selling same, that he would make no charge for his services, and that after the payment of transportation, insurance, warehouse charges and refunding the money advanced, he would give to appellee

one-half the net profits as his compensation; and appellee makes his answer a cross-petition, alleging that owing to the negligence, carelessness and inattention of Seibert in making sales and attending to his part of the duties, he never received anything for his services.

There was no written agreement between the parties. The trial resulted in a verdict of one cent in favor of appellee, and this appeal is prosecuted from that judgment and a reversal asked for several alleged errors.

Plaintiff alleges that he had furnished regularly a statement of accounts to appellee showing the amount of money he had advanced, when and how it was obtained, the number of hogsheads of tobacco he had received, the charges and expenses paid on them, how many of them had been sold, what they had brought and what was done with the money, and that he had in his possession letter-press copies of all these communications, running through a number of years, and the replies thereto of appellee; but of the vast number of letters he had written to appellee only about thirteen of the originals were on file, and as he could not produce the other originals he offered as secondary evidence his letter-press copies as evidence to prove the contents of the mass of communications, after having first laid the foundation therefor.

The court, on motion of defendant, refused to allow these copies to be read to the jury, and this is complained of as, perhaps, the most serious error to appellant's prejudice, as it is insisted that this correspondence would show clearly the terms of the partnership to be as contended for by appellant

and that defendant's claim that he was not to share any part of the losses was without foundation.

While there has been some conflict in the adjudications of the courts, we think the weight of authority on the question of the admission of letter-press copies is, that when it becomes necessary to prove the contents of letters which have passed between parties the originals must be produced, or the party desiring to give proof of their contents must lay the foundation for secondary evidence in the usual and ordinary way, as letter-press copies are not original papers, and can not be admitted in evidence without this preliminary proof; but when this proof has been made these copies are competent evidence. (See Wharton on Evidence, paragraph 6; Foote v. Bentley, 44 N. Y., 166, and Marsh v. Hand, 35 Md., 723.) But the admissibility of this character of evidence must depend upon its legitimate tendency to prove the facts sought to be established. We have read with some care this voluminous and undigested mass of communications from plaintiff's assignor to defendant, which the court refused to permit to be read as evidence, as they appear in the bill of exceptions, and it seems to us that they do not materially differ from a large number of similar communications which were permitted to go to the jury, and they do not furnish additional evidence upon the actual point in issue between the parties; that is, as to the terms of the partnership. They are, in the main, the ordinary communications which pass between parties interested in business ventures, and do not appear to throw any light on the question at bar; and it seems to us that their admission in the form in which they were tendered would have a tendency to confuse, rather

Seibert's Assignee v. Ragsdale.

than to enlighten the jury, and the court properly refused to allow them to be read.

Another error complained of is as to the giving of instruction No. 2 at the instance of defendant, in which the court instructed the jury "That during the continuance of a partnership business one partner has no right to charge the other partner with interest on money advanced to the firm and used in the partnership business, unless there is an agreement between the parties that interest is to be charged and paid; nor would one party have the right to interest on the balance from time to time in the partnership accounts before a general settlement or dissolution of the partnership, in the absence of a special agreement to that effect.

It seems to us that this instruction is in strict conformity with the law announced by this court in the cases of O'Bryan v. Brumbach, 11 Rep., 405; Burgher v. Burgher, 12 Rep., 95; Atkinson v. Dent, 5 Rep.. 118, and Ashbrook v. Ashbrook, 16 Rep., 593, and with most of the elementary writers on this subject.

Another error complained of is the refusal of the court to give instructions asked by plaintiff, to the effect that if any part of the interest account charged for in plaintiff's petition was created on drafts or other paper to enable the firm to hold their tobacco for better prices, and this was done by mutual agreement, or by Seibert with the knowledge and consent or acquiescence of the defendant, the jury should allow such interest. These instructions state the law, if the question at issue had been one of interest alone, but as that was a matter of secondary consideration, and the jury having found against appellant upon the main question, as to the

terms of the partnership, the refusal of the court to give these instructions is not such error as entitles appellant to a reversal.

Appellant selected his own forum and tried the case as an ordinary action, without objection; and, having been decided by a jury, we can not say that their verdict is so palpably and flagrantly contrary to the weight of evidence as to justify us in reversing the judgment. Wherefore it is affirmed.

103 211
112 114

103 211
d119 961

103 211
137 849

CASE 28—PETITION ORDINARY—FEBRUARY 19.