## Sharp et al. v. Culton.

(Decided Jan. 14, 1936.)

R. L. POPE and R. S. ROSE for appellants.

TYE, SILER, GILLIS & SILER and T. B. CULTON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Isaac A. Sharp in his own behalf herein testified thus:

"I had a policy with the Prudential Insurance Company, a group insurance issued—It was an L & N Policy, issued by the Prudential Insurance Company through the L & N Railroad Company. There was a clause in that policy that there was some argument on, that I wasn't working at the time that I had the accident, whether or not this insurance would be paid under that clause as to which I was working. I wasn't working for the Company at that time. I went to Mr. Culton's office. I didn't have the policy. The company required that you fill in your policy on the forms you filled out to collect this insurance, and I borrowed a policy from Ad Gillis something similar to mine, and like anybody else would do, I went and asked Mr. Culton like somebody would, anybody in the

world would that didn't know the law. And I asked if he thought the insurance could be collected under this policy, and he stated positively that the Supreme Court had not ruled on this, and even though then you could not do anything with this policy for sixty days after it was submitted by you to the Insurance Company. Mr. Culton said, 'I will write a letter for you as a personal friend of mine.' I said, 'This is to be no legal affair.' I told Mr. Culton, I says if I want you to handle this at the expiration of sixty days, I will let you know. That is the only conversation I ever had with Mr. Culton. I never promised Mr. Culton one red penny."

This litigation grew out of Sharp's visit to the law office of T. B. Culton, and the conversation occurring at the time and place which Sharp refers to in the foregoing.

Culton alleges in his petition and also testified that Sharp, at the time and place stated in Sharp's testimony, employed him to collect of the Prudential Insurance Company of America a policy payable to Sharp of the face value of $1,500, Sharp agreeing to pay him for his services an amount "equal to whatever amount in excess of $1,000.00 which might be collected from, or paid to him by said insurance company on said claim." Virgil Prewitt and Irene Skinner testified that they were present and heard the conversation of Sharp and Culton when Sharp employed Culton and agreed to pay him all over $1,000 paid by, or collected of, the Prudential Insurance Company of America on its policy to Sharp. Alice Walters testified that Sharp stated to her that he had employed Culton to collect his insurance policy and had agreed to give him $500. Sharp is the only witness in his own behalf. It is apparent from his testimony quoted above that it contradicts that of Culton, Prewitt, Irene Skinner, and Alice. Walters. Culton further deposed that after he was employed by Sharp he proceeded to perform the services necessary and required to collect of the insurance company the $1,500 policy. In substantiation his testimony disclosed what he did towards collecting the policy. Culton filed copies of a number of letters which passed between him and the railroad company, and between him and the insurance company respecting the payment of the policy. After Culton was informed by the insurance company that it would pay it as per its terms, he dis-

covered that Anna B. Sharp, the wife of Isaac A. Sharp, had instituted in the Whitley circuit court an action for divorce and alimony for $3,000 and had garnisheed the insurance company for the sum of the policy. By letter dated April 25, 1935, he informed Isaac A. Sharp of the garnishment of the policy and requested him to come to his office at once; that he believed he could get the insurance money released of attachment if he (Sharp) acted immediately. Sharp, in response, informed him that he was not going to contest the suit of his wife and that he (Culton) "need not take any steps in the divorce suit and in the matter of collecting the insurance either." His letter contains this statement:

"I never employed you to collect the insurance, but only got you to write a letter to Mr. Pharr to know what they were going to do about my insurance, and since my wife is attaching the funds, I have no further interest in it and do not need a lawyer. * * * If you will send me a statement for writing that one letter, I will pay it when I can."

At the time of the writing the letter, Sharp resided at Knoxville, Tenn. Sharp's letter indicates that after her action for divorce was filed, he had no further interest in the proceeds of the policy and was willing to pay Culton for writing one letter, if and when he became able.

Culton filed an intervening petition in Anna B. Sharp's action for divorce against Isaac A. Sharp, setting up his contract with Sharp for a fee, and the performance of his services in accordance with his contract to the point of causing the insurance company to pay the policy except for Sharp's wife's garnishment of its proceeds.

On the evidence the court decreed that Sharp had employed Culton as per the contract set up in his intervening petition, and that he had performed the services according to his contract. It decreed a lien on the policy for a sum equal to an amount above $1,000 paid by the Prudential Insurance Company on its policy to Isaac A. Sharp, or $500.

Isaac A. Sharp entered a motion to transfer to the ordinary docket the issue between himself and Culton. The order showing the entry of the motion contains these words: "And the court takes time." Later, the

cause was submitted for trial and judgment. The witnesses were heard in open court. The judgment of the court contains this statement:

"This case having by agreement of the parties been submitted to the court and tried by the court without the intervention of a jury, on the issues presented by the petition of the defendant, T. B. Culton, to be made a party, and on the intervening petition of said T. B. Culton, and the court having heard all of the evidence presented and offered by the parties on said issues, and having duly considered same and being advised, it is adjudged by the court that said T. B. Culton recover of the defendant, Isaac A. Sharp, etc."

We find in the stenographer's record, immediately preceding the testimony of the witnesses a statement to the effect that the Sharps renewed their motion to transfer this action to the ordinary docket to try the question of contract or no contract between Culton and Sharp, and that the court refused to grant the request. It thus appears that there is an irreconcilable conflict in the statements contained in the record, respecting the motion to transfer the issue to the ordinary docket. Since it was the duty of the court to enter an appropriate order, showing its ruling on the motion to transfer and not that of the stenographer to do so, in the circumstances, we are constrained to be guided by the quoted recitation in the judgment.

Sharp is here contending that "the contract sued on is vicious, void and champertous"; "it contracts for a fee as part of the thing in litigation, or the subject matter itself;" "the contract is so out of proportion to the alleged services rendered as to be unconscionable and amounts to constructive fraud." "It is a contract against public policy." The basis of such argument is an erroneous assumption that Culton alleged in his petition and testified that the contract between him and Sharp was, that he was to be paid for his services "all sums above $1,000.00 of this insurance." An examination of Culton's intervening petition and his testimony discloses that he both alleged and testified that Sharp agreed to pay him an amount equal to the sum that was collected by him or paid by the insurance company over $1,000. It is true that Irene Skinner and Virgil Prewitt, in narrating the conversation between Culton and Sharp

at the time of the making of the contract used the language, "all sums above $1,000.00 of this insurance." The court had before it not only their testimony, but that of Culton, which was sufficient to authorize and sustain the judgment. The contract being thus definite and certain as to the amount, the rule for reasonable compensation for legal services has no application and the court properly declined to apply it instead of the criterion fixed by the contract of the parties. Percifull v. Wilson's Heirs, 3 Ky. Law Rep. 759, 11 Ky. Op. 545. Sharp contends that the sum of $500 is out of proportion to the services performed; that the contract is unconscionable and amounts to constructive fraud. This is equivalent to a request of the court to relieve him of his contract, which we are not authorized to do. Having agreed with Culton to pay him for collecting whatever he might be paid on the policy in excess of $1,000, Culton is entitled to recover as per the contract (Schmitz v. South Covington & C. St. Ry. Co., 131 Ky. 207, 114 S. W. 1197, 22 L. R. A. (N. S.) 776, 18 Ann. Cas. 1114; Elk Valley Coal Min. Co. v. Willis & Meredith, 149 Ky. 449, 149 S. W. 894), in the absence of a showing that he failed to perform the services which he agreed to perform, or that he failed to do something which he should have done. Stowers v. Runyon, 206 Ky. 479, 267 S. W. 554. Culton had a lien on the proceeds of the policy as against Anna B. Sharp for an amount equal to whatever sum was paid thereon in excess of $1,000. Louisville & N. R. Co. v. Proctor, 51 S .W. 591, 21 Ky. Law Rep. 447; Section 107, Ky. Stats.; Schmitz v. South Covington & C. St. Ry. Co., 131 Ky. 207, 114 S. W. 1197, 22 L. R. A. (N. S.) 776, 18 Ann. Cas. 1114; Chreste v. Louisville R. Co., 167 Ky. 75, 180 S. W. 49, L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867.

Culton having performed, as he agreed to, the services under his employment contract respecting the policy of insurance prior to Sharp's letter notifying him that his services were no longer desired, his letter did not have the effect of depriving Culton of the benefit of the contract which had been fully executed by him prior to the date of the letter. Culton read to the court as part of his evidence copies of numerous letters which he had written to the insurance company and the railroad company respecting the payment of the policy.

It is true that the accepted rule is that copies of letters are secondary evidence, and when it becomes

necessary to prove their contents the originals must be produced or the party desiring to give proof of their contents must lay the foundation for secondary evidence in the usual and ordinary way, and when the preliminary proof has been made copies are competent. The copies introduced by Culton did not relate to or tend to prove the contract in issue. They disclose the efforts Culton was making to cause or induce the payment of the insurance policy. His testimony, independent of the letters, described the services performed in accordance with his contract of employment. In the circumstances, the introduction of the copies of the letters was no more than a harmless error and in no way affects the merits of the case. Seibert's Assignee v. Ragsdale, 103 Ky. 206, 44 S., W. 653, 19 Ky. Law Rep. 1869. Sharp cites to us numerous cases bearing on the question of the reasonableness of an attorney's fees. The contract having definitely fixed the amount to be paid Culton, the reasonableness thereof was not an issue. He also cites to us cases dealing with contracts for a part of the subject-matter for attorneys' fees, and not for a sum equal to a certain part of the fund. Those cases are inapplicable to the proven facts. He argues that the court erroneously adjudged Culton a lien on the proceeds of the insurance policy without notice to Anna B. Sharp. We are unable to conceive the force of this argument, since Culton's pleading was filed in an action to which she was a party and to which she responded. Such was a positive notice to her of the lien asserted on the proceeds of the policy. Her garnishment of the proceeds of the policy gave her no greater right thereto against Culton than Sharp himself had, Patterson v. Miracle, 253 Ky. 347, 69 S. W. (2d) 708. Perceiving no error, and without giving weight to the judgment of the court, plainly the evidence fully authorized and sustains the judgment.

Wherefore, it is affirmed.