## Birkhead v. Ringo et al.

(Decided June 10, 1938.)

KIRK & BARTLETT and HERMAN A. BIRKHEAD for appellant.

BEN D. RINGO and F. A. ROBY for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The controversy presented here is an outgrowth of Howard v. Mitchell, 268 Ky. 429, 105 S. W. (2d) 128, which was a suit to determine the rights of numerous heirs at law of Lucius and Mary Howard. After a tedious journey through the courts it was determined by this court that five children of Lucius and Mary were the owners of one-seventh each of the tract involved; the children of James Howard the owners of one-seventh, and Thomas Howard, and his vendees, Mitchell and Birkhead, the owners of one-seventh. The lower court had declared for appellees on Thomas How-

ard's claim, based on adverse possession. This court found otherwise, holding him to be a joint tenant.

The decision on the appeal, supra, was rendered by this court on March 27, 1936; a petition for rehearing was overruled June 8, 1937. Mandate was filed in the Ohio circuit court about June 14, 1937, when the case was redocketed for the purpose of vacating the former judgment, and entry of one in conformity with the mandate, and a judgment was then tendered which undertook to allocate the various interests in accord with the mandate. It also undertook to fix the right of the various owners to rents and royalties, admittedly received by the lessors of the land, Birkhead and Mitchell, subsequent to September 27, 1927. No mention was made in this tendered judgment of the claim of appellees, based on their alleged right to a lien (save upon the one-seventh interest of Tom Howard) for services rendered plaintiffs in the original suit.

When the mandate was filed Mitchell offered an amended petition, which after setting out the various interests, showed that on May 7, 1936, and after the decision of this court, but before petition for rehearing had been overruled, he had purchased four-sevenths interest not only in the tract of land, but all intervening interests of four plaintiffs in the original action. At the same time the four original plaintiffs tendered an amended petition, in which there was given, at some length, a history of the litigation; the interests of the various parties, and with this pleading was tendered another judgment, reciting that Birkhead and Mitchell were the owners of the Tom Howard one-seventh interest; that P. J. Howard had died leaving seven children, some of whom were infants, fixing the interests of these children at 1/49 each, subject to the dower rights of the widow. This judgment (based on proper pleadings) further showed that the four original plaintiffs, and appellants had sold their interests as stated.

The judgment also recited that Birkhead and Mitchell had taken possession of and continued to operate the property, the date of such possession being fixed as the date of the Thomas Howard deed. It was also stated that on March 20, 1924, certain oil operators had entered the land under lease from Thomas Howard, and later began to operate. Under this lease the operators were to pay rentals and a one-eighth royalty. It was

recited that from Sept. 1927 Birkhead and Mitchell had received all royalties, and it was adjudged that they should account to the various owners for six-sevenths of the profits from operations, thus excluding their one-seventh interest. The judgment recited that from the beginning of production, the royalties totaled approximately $7,678.60, from which there was deducted the Thomas Howard one-seventh, leaving about $6,581.66, for which judgment was given, and it was ordered that the sum awarded plaintiffs be paid to appellees, attorneys for all parties in the original suit, except Thomas Howard.

The judgment also recited that pending the litigation, other interests had been assigned by owners to various parties, but it is not necessary to a decision of the question to make further reference.

Appellees filed intervening pleadings in which they detailed their part in the litigation. It is not necessary to repeat since many of the allegations therein have been recited. They were employed by the plaintiffs in the original action May 17, 1929, to bring suit to determine their rights as against Thomas Howard, and his vendees. Their contract was reduced to writing July 23, 1929. On September 20, 1930, suit was begun and litigation therein was not completed until June, 1937. The contract provided that the attorneys, for their services, were to receive an amount equal to one-half of whatever might be recovered, the litigants to pay all costs incident to the prosecution of the suit.

In their pleading they incorrectly set up the amounts received by defendants by way of royalties, which mistake was later corrected. The intervenors also alleged that whatever these defendants did in relation to purchases of interests (save Tom Howard's) they did with notice and knowledge that the intervenors had a lien for services upon any recovery in behalf of their clients.

The relief sought by intervenors was that the land be sold, a distribution of the proceeds among the various owners as their interests appeared, and for judgment against Birkhead and Mitchell for one-half of the 6/7 of receipts, and that they be adjudged owners of one-half undivided interest in such of the land as had been adjudged to original plaintiffs. All parties having interest in the tract of land, and profits from operation, join in seeking a sale and division.

To the intervening petition Mitchell filed answer, admitting the services rendered by intervenors, and disavowing that at the time of his purchases, or at any time, was it his intention to "interfere with any agreement between the attorneys and their clients." By amendment he corrects the figures set up in the intervening petition as to receipts by himself and Birkhead, and admits that he received, by separate checks, one-half the total. He sets up certain sums expended for taxes, and perhaps other expenses, which he says should be deducted from receipts and that of the balance he should pay one-half and Birkhead the other half. He also prayed for other relief based on pleadings, which had nothing to do with the matter in issue. It also appears in the pleadings that in July 1937, Birkhead had purchased the interest of Coleman Howard, from a third party.

Defendant Birkhead filed separate answer to the intervening petition, raising the issue before us for consideration. He denied that he has, or had, prior to the year 1936, knowledge or information of the alleged written contract; denied that it represented a fair and just compensation for services rendered by them, and suggests 33 1/3 per cent of recovery would be reasonable.

It is admitted that prior to May 1, 1930, he and Mitchell collected rents and royalties to the amount of $3,243.46, of which he received one-half or $1,621.73, and alleges that they did not collect after May 1, 1930, and up to June 10, 1937, the sum set up in intervenors' petition and second judgment, to-wit: $4,056.52, but the real sum was $1,854.94, of which his one-half was $927.47.

He denies that while any judgment against him and Mitchell was in force, Mitchell purchased any interests of the plaintiffs, but says that the purchase was made before judgment in the original suit was entered against himself and Mitchell.

It is then plead that if Mitchell bought the interests of the plaintiffs, subject to a lien for attorneys' fees, the lien only attached to the amount of the purchase price paid by Mitchell. In order to get the effect of this latter plea it is necessary to go to appellant's answer to the amended and supplemental petition filed by plaintiffs when mandate was filed. In this pleading he

recites the sale of the interests of the four original plaintiffs to Mitchell, and sale of the smaller fractional interests, which he says left 10/49 of the tract undisposed of, and based on his figures of the profits from operation, he makes tender of $810.49 in full satisfaction of their claims. Pleading further, he says that he is advised, and so states, that "before the rendition of any judgment" the original plaintiffs had sold their interests for $950, hence the attorneys, under their contract, should receive only $475, and he makes tender of this amount in satisfaction of their claim, subject to a credit for one-half of taxes and expenses paid.

Intervenors filed an amendment, in which they correct their figures as to the royalties received to comport with those set up by appellant's answer. The former judgments were withdrawn, and their prayer was for judgment in the corrected amount.

The court thereupon took up the case on the pleadings, and adjudged as follows: The oil runs had grossed to Birkhead and Mitchell $5,178.02. Of this sum the defendants, owners of the Thomas Howard interest, were entitled to one-seventh of the proceeds. This left a balance of $4,352.59, due the owners of the remaining interests. The court held that under the contract between original plaintiffs and intervenors, the latter were entitled to "one-half of whatever money or property" had been recovered for their clients, and it was adjudged that they should recover of Birkhead and Mitchell $2,176.29, from which order Birkhead alone appeals.

The amount awarded was without prejudice to any and all claims of defendants for taxes and expenses. This question, and claim for interest on the installments of moneys received by defendants, were reserved for future adjudication. The land in controversy was ordered sold by the commissioner, the distribution of proceeds to be adjudicated after report and confirmation, except that the fractional interest of defendant Birkhead should not be sold, but retained by him, subject to a lien in favor of intervenors. The distribution of future royalties was to be made by the court as occasion demands. Appellant Birkhead objected to the order which adjudged a lien against his fractional interest. To the judgment, insofar as it affected him, Mitchell objected, and was granted an appeal, but has not prose-

cuted same to this court on this record. We treat as a mistake or misprision on the part of the court, that part of the judgment awarding lien on appellant's fractional interest, since, as we read the pleadings, there were no allegations which would authorize the court to adjudge same. Intervenors laid no proper grounds for its award. We gather from appellee's brief that all parties interested in this controversy are solvent. This portion of the judgment should be corrected on its face.

We do not find any difficulty in concluding that judgment otherwise was proper, and that appellant's position is untenable. There is an intimation that the fee is too large, and that a lesser sum would have been commensurate. There is no proof on this question. It is not charged that the contract is at all tainted.

The plea that the fee of intervenors should be based on the amount which the vendors of the various interests received for their interests is not well founded, nor is the argument that the lien allowed by section 107, Kentucky Statutes, did not attach until after the final judgment. We have respectable authority to the effect that if it later develops that the attorney is entitled to a lien on what is recovered, such lien relates back to the time the contract is made.

In Robertson & Cleary v. Shutt, 9 Bush 659, in giving interpretation to what is substantially now section 107, Kentucky Statutes, we referred to the earlier case of Stephens et al. v. Farrar, 4 Bush 13, and pointed out that the statute was "held as operating 'to render the claim in litigation, both before and after judgment, subject to the attorneys' lien in the hands of the debtor.'" We further said:

"Looking to its manifest two-fold objects of protecting the rights of attorneys, and at the same time enabling insolvent or indigent litigants * * * to obtain the services of competent lawyers, we are of the opinion that the lien of Cleary attached to the claim of Robertson at the commencement of its prosecution by him, and when in its unliquidated state it was not subject to be set off against the judgment of Shutt; and the lien of the attorney being thus fixed, as an incident of his continuing service, was not liable to be overreached by the subsequently-acquired rights of set-off in Shutt * * *."

In a later case, Harlan & Co. v. Bennett et al., 127

Ky. 572, 106 S. W. 287, 32 Ky. Law Rep. 473, 128 Am. St. Rep. 360, we decided that attorneys, who represented a defendant, and on counterclaim made recovery, were entitled to a lien, and citing the Robertson Case, supra, held that, "as appellees filed Palmer's answer and counterclaim several months prior to the time of appellants' attachment, appellees' lien, if they had any, related back and took effect from the time of the commencement of their services, and was superior to the attachment," which attachment we note was after the filing of answer, but before judgment. Thus we conclude here that if intervenors had a lien under the statute, which is no longer an open question, such lien attached at the commencement of their services.

Nor was this lien defeated by the transactions had between the original owners and their vendees. The pleadings show that none of such transactions were anything more or less than sales of interests. We have read the record closely and with sufficient care to be able to say that there is no pleading which intimates that any sale of interest by prior owners was in settlement or compromise of the pending controversy as between the vendors and vendees. True, there was a motion by Mitchell to abate as to his vendors, but made after mandate was filed, and was based solely on the ground of his ownership.

Reference is made to Gray v. Graziani, 165 Ky. 771, 772, 178 S. W. 1070, and Chreste v. Louisville R. Co., 167 Ky. 75, 180 S. W. 49, L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867, in which it was held that an attorney who prosecutes a cause to judgment has a lien for fees, though his client may, as appeared in the Gray Case, settle the judgment without receiving anything of value therefor. Other cases are cited from foreign jurisdictions as bearing favorably on appellant's contention, but in the cases cited there was present the element of compromise of the litigation before judgment, or settlement after judgment. These cases, insofar as they relate, only go to serve as guides for application of section 107, Kentucky Statutes, illustrating in what cases, or class of cases the attorney has a lien, either on the judgment or the amount received by way of settlement or compromise, where the attorney was ignored, or was not consulted.

Counsel admits that he has found no case in Ken-

tucky involving specifically the matter of lien to attorneys where there has been settlement of a claim during pendency of appeal. Neither has the court, though from the view entertained we express the opinion that such a case would serve to no great purpose. If there had been settlement after judgment, or a compromise prior thereto, this question might be pertinent. Since it is unquestionably shown that there was no attempt here to settle or compromise any pending litigation, but an outright sale, as is termed in briefs—a sort of speculative proposition, both as to vendors and vendees—it is at once apparent that the purchasers took title to all interests, encumbered at that time by a lien against whatever portion might be recovered by the efforts of the attorneys.

A case in our jurisdiction having some bearing on the real question here at issue is Getaz v. Eversole et al., 234 Ky. 164, 27 S. W. (2d) 688, in which we held in line with cases cited therein, that an attorney is entitled to his fees where parties sell the property involved, after the suit is instituted. This case seems to reveal that the fee was fixed on quantum meruit and not on a basis of percentage of recovery, and declared attorneys entitled to a lien on the land involved.

There are several cases in other jurisdictions which go far in upholding our view that the purchasers of the land, and the beneficiaries of lease royalties, taking title to land and interests, do so subject to the lien of attorneys. In Steuart v. D'Esterre, Sup., 170 N. Y. S. 936, it was held that the attorney had a lien on his client's interest in both real and personal property, superior to the claim of a subsequent assignee.

In Dreyfuss v. Freud, 209 Ill. App. 345, the court held that one purchasing land subject to an attorney's lien for services, after notice of the lien, took title subject to the attorney's lien. To the same effect is Gust v. Van Court, 74 Okl. 81, 178 P. 683. In Lovett v. Moore, 98 Ga. 158, 26 S. E. 498, a case somewhat similar, as far as facts go, it was held that "if, pending the litigation out of which such a claim of lien arises, the client, by way of securing a pre-existing debt, executes a deed conveying to another the property involved, the grantee in such deed takes subject to the existing inchoate right of the attorney whose claim of lien is ultimately established by a judgment in favor of his client." O'Brien

v. Whitehead, 75 Ga. 751. In these cases, or at least some of them, the question of notice was deemed essential to the protection of the attorneys' asserted lien.

It is true that in Charles v. Whitt, 187 Ky. 77, 80, 218 S. W. 994, we held (page 996):

> "The provision of section 107, supra, which provides, 'and if the records show the name of the attorney, the defendant in the action shall have notice of the lien,' would not, by the force of the statute, have the effect of making him a purchaser with notice, as he was not a defendant in the action in which the land was recovered, nor a party to it in any way."

But here the purchasers of the land, and the interests, were defendants in and all the way through the action seeking recovery. The general, and we may say the almost universal rule, is that the giving of constructive notice is not necessary, where the purchaser is otherwise chargeable with notice, as is undoubtedly the case here. Hodnett v. Stewart, 131 Ga. 67, 61 S. E. 1124; Newbert v. Cunningham, 50 Me. 231, 79 Am. Dec. 612. In our own jurisdiction we find that we have followed the generally accepted rule. Sharp v. Culton, 262 Ky. 84, 89 S. W. (2d) 861; Proctor Coal Co. v. Tye & Denham, 123 Ky. 381, 96 S. W. 512, 29 Ky. Law Rep. 804.

It is not contended by appellees that reliance is had on the lis pendens lien filed with the clerk after the conveyances and assignments set out, and after the appellant and his associate began to operate the property. This was done, perhaps, under the correct assumption that such action was necessary to protect their lien as against subsequent purchasers without notice, and the filing or non-filing of the lis pendens did not affect appellees' rights as against purchasers who were chargeable with notice.

After a careful review of the entire case, we are of the opinion that the chancellor was correct in his judgment, except as to the mistake hereinbefore noted, which may be corrected on the judgment.

Judgment affirmed.