## Commonwealth, for Use and Benefit of State Highway Commission et al. v. Wilhoit, Banking Com'r, et al.

(Decided Oct. 14, 1938.)

L. C. FLOURNEY, JR., W. B. HARRIS and HUBERT MERE-DITH, Attorney General, for appellants.

E. R. MORTON, G. L. DRURY, PERRY B. MILLER and W. T. DRURY for appellees.

Opinion of the Court by Morris, Commissioner—Reversing.

Parties appellant are the Commonwealth for the use and benefit of the Highway Commission, Union County, Kentucky, and the Commonwealth for the use and benefit of Union County. Appellees are the Bank of Sturgis and numerous individuals, some representatives of estates of deceased persons, and perhaps some corporations and business partnerships.

The facts upon which the suit below was predicated are stated in part in Commonwealth v. Farmers' State Bank, 225 Ky. 759, 10 S. W. (2d) 274, Oct. 5, 1928. The differences are that the notes here were discounted to the Bank of Sturgis, and certificates of deposit issued by that Bank to the Highway Commissioner to the

amount of $17,475, payable in three installments of $5,858.33.

In the case supra the lower court held that the conditions of the certificates had not been complied with, and cancelled them. This court did not go into the merits of that case, but reversed the judgment on the ground that the makers of the notes, being materially interested in, and to be affected by the controversy, and who were not parties below, should be made parties.

The petition in the instant case was filed on April 16, 1926, the same date as the filing in the reported case, and was similar in all respects to it, except as to the matters noted above. In the instant case the defendant Bank filed a special demurrer to the petition, stating as grounds that the plaintiff was without legal capacity to sue; (2) another action is pending; (3) because of a defect of parties, since others were claiming interest in the funds.

The court overruled the special demurrer, but later set the order aside and defendants filed general demurrer. Thus the case stood on the docket until February 6, 1928, when on motion of plaintiff it was continued, apparently without objection. No motions, pleadings or orders appear from the record until February 14, 1936, when, as is shown, the plaintiff tendered and filed an amended petition after the decision above mentioned. The amendment by the original petitioner alleged that the "funds" sought to be recovered by plaintiff were composed of and derived from subscriptions and donations made in cash or evidenced by the execution of notes, which were owned by and were the property of the Bank of Sturgis, prior to the certification made by the Bank of Sturgis to the plaintiff, as fully set forth in plaintiff's original petition.

It was alleged that said newly-made defendants (naming them) "are parties in interest, and that their right will be affected by the termination of this cause, and they should be, and were called upon, to answer and set up their claims, and to show cause, if any, why this fund should not be paid by defendant * * * to plaintiff," and summons was issued and returned, and warning orders made. This pleading had the effect only of bringing in new parties, note-makers. No relief was sought as against them.

On March 16, 1936, defendants entered motion to strike the name of the State Highway Commission as party plaintiff, on the ground it no longer had any interest in the cause, and because the suit was not instituted by the proper parties in interest. They also tendered motion to strike from the amended petition the names of the parties (apparently subscribers and note-makers) because they were improperly joined, and likewise a motion to require the plaintiffs to file as exhibits the obligations of defendants respectively, upon which recovery is sought. With this motion to dismiss the action, because not brought by the proper parties in interest, on the ground as later developed, that the Highway Commission had been fully paid the cost of construction through Union County, certain exhibits were filed, which will now be noted.

A certified copy of the cost statement of the Highway Commission, which was headed "Union County, status of county funds on the following projects," showed there had been paid by the County on the Morganfield road, a total of $93,205.09; of this sum $75,754.93 was by county treasury checks, and that on June 28, 1928, and August 12, 1929, the Highway Department had credited Union County with its proportionate part of truck license refunds, covering eight years, to the total of $18,450.16.

There is an excerpt from the minutes of the Union County fiscal court of date April 5, 1928, wherein it is recited that Union County was indebted to the Highway Department in the sum of $18,450.16 on the project. Further, that the department was indebted to Union County for truck license fees for 1925 and 1926. Upon proper motion and vote the department was "hereby directed to credit said amounts due this county on indebtedness due by Union County above set out," and it was further "directed and empowered to apply all truck license fees which may be due and payable to Union County until the full sum of $18,450.60, shall have been fully paid."

An excerpt from the minutes of a meeting of the Highway Commission of date April 11, 1928, shows that the engineer was directed to credit the truck license refund due Union County on this county's old indebtedness of $18,500.

On May 25, 1925, defendants moved the court to re-

quire plaintiff to make its petition more definite and certain as to the contractual relation between plaintiff and each of these defendants, and the breach thereof, if any, and to state definitely the amount sought to be re-covered of each.

Without any of these above mentioned motions having been passed on, the court, on September 7, 1936, entered the following order:

"The motion of the defendants to dismiss the petition of the plaintiff, for the reason that the plaintiff, Commonwealth of Kentucky, for the use and benefit of the State Highway Commission of Kentucky, has heretofore been paid by the County of Union, all demands it had against said county on account of the construction of the road mentioned in the pleadings, coming on to be heard, it is now ordered and adjudged by the court that said plaintiff does not have the right to prosecute said action for its own use and benefit and said motion is therefore sustained and the plaintiff is given leave to plead further if it so desires, to which ruling the plaintiff excepts."

As is noted, this order was made in September, 1936, and the cause thus stood until October 19, 1936. Then in response to a motion of defendants to dismiss the petition because of lack of authority on the part of the attorneys of record to bring the suit, the Attorney General tendered a response to the motion. In said response he said that he had familiarized himself with the record, that is the pleadings, exhibits, order, etc., and that he "now adopts all pleadings filed in behalf of the commonwealth," and asked to be permitted to continue in its further prosecution.

On October 28, 1937, plaintiff was given until and including November 23, 1937, to plead further, and on that day Union County tendered what is styled "intervening petition," the substance of which was that it was an interested party, necessary to a final determination of the suit; that on August 2, 1929, it sold and transferred without recourse, to appellee Bank, $17,475 worth of said notes, subscriptions, executed and delivered to it by various defendants herein, the proceeds of which were to be and were placed by the Bank to the credit of the State Highway Commission, and directed the Bank

to, and it did, issue to the Commission its certificates of deposit.

It was said that the sum of money represented by the certificates of deposit was to be used for the construction of Route No. 1, through Union County. Further, that the project was completed on the faith of the subscriptions, evidenced by the certificates of deposit, and that the Bank would pay the sum so held by it upon completion of the road as a part of Union County's portion of the total cost thereof, and that the Highway Commission had repeatedly demanded and refused payment of the sum.

Afterwards, the Commission paid for the construction of the project and, to reimburse itself to the extent of the balance of the amount Union County was to contribute toward the construction, the Commission withheld truck licenses due to Union County slightly in excess of the certificates of deposit. It was then plead that the Commission was entitled to recover of defendant (Bank) $17,475 ''for the use and benefit of Union County'' and it was so prayed.

Later, on November 25, 1936, the Commonwealth for the use and benefit of the Highway Commission and Union County, by the Attorney General and counsel in the original petition, tendered an amended petition, to the filing of which the defendants objected. In this amendment, signed by the Attorney General, the Commonwealth, for the use and benefit of the Commission and Union County, alleged that on the faith of the certificate of deposit executed and delivered to the Commission, as alleged in the original petition, it completed project Route No. 1, as designated in the certificates of deposit and during the construction of the road, it repeatedly demanded of the Bank that it pay to the Commission the sum of $17,475, but that its demand was refused.

It was then plead that the Commission completed the road and paid the costs, and later withheld from Union County a sum in excess of the amount on deposit to the credit of the County, due to it, the sum of $18,450.16 ''to pay the Commission more than the amount deposited and certified, and hence it is now entitled to and does now bring this suit for the use and benefit of Union County, in order that Union County may be reimbursed for the truck license withheld by it,

and to pay the deficit caused by the refusal of appellee to pay over to it the amount of the certificates." It prayed for judgment against the Bank, for the use of Union County. To the filing of this amended petition objections were made by all defendants.

Upon the state of pleadings, as we have recited them, the court on September 18, 1937, took up the cause for hearing on the motion of the Attorney General to file his response, on the motion of Union County to file its intervening petition, and upon plaintiff's motion to file its amendment. The court sustained all objections of defendants, reciting that it was of the opinion that "said pleadings, together with plaintiffs' original petition, does not state a cause of action in favor of Union County, and therefore refuses to allow said pleadings to be filed." The plaintiff then refused to plead further and the petition was dismissed.

As we view the record before us, we have for consideration the sole question as to whether or not the court properly rejected the filing of the intervening petition of Union County, and the amended petition of the Commonwealth, and this is the only question considered and decided. The question as to whether the court erroneously rejected the Attorney General's response to the motion to dismiss, made by appellees, need not be discussed, since it only affected the petition as originally filed, and amended by bringing in the makers of the notes. Again, the answer to that objection is absorbed in the conclusion reached as to the propriety of filing the commonwealth's amended petition.

We need not discuss at length the argument that since the court, on September 7, 1936, dismissed the original petition the cause became moot, since as we read the order so doing the court specifically extended the plaintiff the right to amend. The case, as is shown, had theretofore been continued without objection, and we find no order striking the action from the docket. After the court had dismissed the petition with leave to amend (and this was after the note-makers had been made parties), there was no move on the part of appellees to strike the cause from the docket, or to dismiss by final order. In short, the order made may be looked upon as one sustaining special demurrer on the ground of no right of the commonwealth to sue, which would have allowed plaintiff, if it so desired, to amend.

Nor shall we do more than discuss briefly the argument that the appeal as to notemakers should be dismissed, regardless of other conclusions, because of failure to comply with or observe certain procedural provisions of the Civil Code of Practice (Sections 18 and 83), one relating to the joinder of actions, the other to the prosecution of a cause by the real party in interest. This appeal, up to a certain point, presents the same pleadings, cause of action and relief sought, as were embraced in Com. v. Farmers' State Bank, supra. The difference in the two cases, as we view the record in each case, is that here it was shown that the debt to the Commission had been satisfied. In the former case the defense by the Bank was non-compliance with the terms of the obligations. The difference in this particular does not relieve the necessity, or at least the propriety of having the notemakers as parties in the case, as was distinctly held in the Farmers' Bank Case. As to the prosecution of the suit by the real party in interest, in addition to what we shall say on the pivotal point, it may be observed that when the suit was begun the Commonwealth for the Highway Commission, as shown by the pleadings, was the real party in interest, and it was only after defendants raised this issue by its motion to dismiss that the situation changed in this respect. Certainly in this state of case the commonwealth would have a right to plead, and show the manner of the satisfaction of its claim, and to so plead as to show its right to protect the rights of other parties, if any such existed.

It may be true, as argued by appellees, that the right of intervention is statutory. We think there is ample statutory authority to justify the right of the county to intervene. Under the terms of Sections 23 and 28 of the Civil Code of Practice it is evident that the court below either might have, and could have, sua sponte or on proper motion, made Union County a party. The interest of the county (if any) was divulged, by the motion and attending exhibits of defendants, and the Code provisions, supra, justify its entrance into the controversy. Board of Education of Mercer County v. Allin, 134 Ky. 763, 121 S. W. 676. But this need be discussed no further, as will become apparent later in the opinion.

We come now to the matter of the rejection of the

commonwealth's amended petition. We think we have shown sufficiently that the county was a proper and necessary party. It plead enough to manifest an interest in the subject matter, and while it did not in its prayer ask for judgment on its own behalf, it prayed that the suit might continue in the name of the commonwealth for its use.

It may be, though not necessary to decide, that the county's general prayer for all proper relief, might, if defense had been made, and in case of a conclusion in its favor, have been entitled to a judgment in its own name. Roberts v. Redwine's Ex'r, 176 Ky. 799, 197 S. W. 452.

As will be gathered from the foregoing, it cannot be questioned that the Highway Commission, as such, had no direct interest in the real controversy, since it is clear that its withholding of Union County's portion of truck license refunds had satisfied its part of the road's construction. The pleadings (and exhibits) show that the Commission withheld such portion of fees for a period of two years. Thereafter Union County agreed to the past action, and further that the Commission should continue to withhold and apply its portion of future refunds until the county's unpaid portion should be liquidated.

The practical effect of this transaction, to say the least, was the foregoing of any claim it had against the county, its formerly asserted claim against the Bank, and any potential claim against defendant note-makers. Likewise, the practical effect of the transaction was to vest in Union County any and all rights existing or potential. It could hardly be conceived that by the transaction the Commission intended to, or did, transfer or assign any of its rights, or interests, to the defendant Bank, or defendants' note-makers. Yet, if argument of appellees be sound, this would be the practical, mayhap not the legal effect of the transaction, and could hardly be countenanced in a court of justice.

When we analyze the pleadings, including appellees' motion to dismiss with exhibits filed, we are of the opinion that there was in fact, and in law, such a transfer or assignment of the rights of the Highway Commission as is contemplated under Sec. 20 of the Civil Code of Practice. Particularly does it appear from the

pleadings that the transaction exemplified such an intention on the part of the Commission and the County. In the Commonwealth's tendered pleading, after setting out in detail the payment of Union County's debt, and that the county's failure to meet the debt was due to the Bank's refusal to pay, it was plead that the Commonwealth for the use and benefit of Union County "is now entitled to, and does bring this suit for the benefit of Union County, in order that Union County may be reimbursed for the truck license withheld by the Commission, in order to pay the deficit by the failure of the defendant (Bank) to pay."

If in fact there was no previous (or later) physical assignment of the certificates of deposit, or whatever evidence of the obligation the Commission had, the quoted language was manifestly a transfer of all rights of the Commission to the County.

With this state of facts appearing, in addition to the quoted portion of the pleading, it becomes apparent that Sec. 20 of the Civil Code of Practice has application.

"If the right of the plaintiff be transferred or assigned during the pendency of the action, it may be continued in his name; or the court may allow the person to whom the transfer be made to be substituted in the action, proper orders being made as to security for costs."

The transfer or assignment evidenced here was of a chose in action. Neither Code nor statute has provided any particular form by which an assignment or transfer shall be made, as far as we can observe. The courts have laid down no form or rule. The general rule is that since equity disregards mere form, no particular form of instrument or fixed words is necessary to effect an equitable assignment. "Any language, however informal, if it shows the intention of the owner of a chose in action to transfer, so that it will be the property of the transferee, will amount to an equitable assignment. 4 Am. Jur. 76. Such effect may be given to any order, writing or act which manifests an intention to transfer. Our courts have held in some very old cases that any order, writing or act which makes appropriation of the fund, amounts to an equitable assignment. No set form of words is necessary. Newby v. Hill, 2 Metc. 530, is

one in which the assignment was in parol. See, also, Frankfort Bank v. Hunter, 10 Ky. 292, 3 A. K. Marsh. 292; Gray v. Briscoe, 6 Bush 687, all cited in Patterson v. Miracle, 253 Ky. 347, 69 S. W. (2d) 708. See, also, Builders' Duntile Co. v. W. E. Dunn Mfg. Co., 229 Ky. 569, 17 S. W. (2d) 715, 66 A. L. R. 1423.

In conclusion we are of the opinion that upon review of the entire record before us, there is shown a clear intention of the plaintiff to transfer or assign its right in any possible recovery to Union County, and that by the pleading of the Commonwealth, in connection with the showing made by defendants on motion to dismiss, the defendants had notice of this intention. This intention to do so would be subject to amplification by parol testimony. It would be possible to show an actual endorsement delivery of any evidence of debt or obligation on the part of the defendants to the County. It is enough for us to hold that the transaction between the County and the Commission, as shown by exhibits and pleadings, was sufficient to permit the Commonwealth to continue the suit in its name, or jointly with Union County, in the latter's behalf.

This controversy has been in the court for more than twelve years, and in justice to all parties should be brought to a finality. Further, we cannot see wherein any injustice or hardship will be occasioned any parties to the litigation by permitting all the patries, necessary, proper, or in interest, to have the court determine the case on its merits.

The judgment is reversed with directions to set aside the order denying the filing of the rejected pleadings, and for such further procedure as may appear to be proper.

The whole court sitting, except Justice Baird.