## Young et al. v. Auxier et al.

June 11, 1946.

P. B. Stratton for appellants.
Jean L. Auxier and O. T. Hinton for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

The matter presented is an outgrowth of litigation which resulted in three former appeals. Pinson v. Williams, 288 Ky. 314, 155 S. W. 2d 869; Pinson v. Bentley, 293 Ky. 490, 169 S. W. 2d 305; 298 Ky. 396, 182 S. W. 2d 974. The reader is referred to them for a history of the litigation which began as far back as 1935. We shall only state the situation and status of parties following our last opinion.

That appeal involved the disbursement of funds remaining of the deposit by Bentley and Johnson, purchasers of William's right of redemption of the Pinson lands, sale having been theretofore set aside. Johnson and Bentley had deposited this sum in 1937, and the commissioner had made a deed and placed them in possession. They had used the land and had collected some royalties. The chancellor adjudged that Bentley and Johnson should take down their deposit, allowing interest at 6% from the date thereof, taxes and expenditures for improvements, and charged them with rentals at $700 per year. Day et al. on appeal contested the allowance of interest, and contended that rentals should have been $1200 per year, and the occupants charged with waste. We upheld the chancellor as to rentals, and allowed for waste, but reversed as to interest. This left the matter in the same shape it was following our 293 Ky. opinion, with Johnson and Bentley out and the clerk holding the fund. Following the mandate reinstating the right of Pinsons to redeem their lands, on December 27, 1941, they procured from Day, Rice, Billiter and Johnson $22,000, the amount thought necessary to redeem. At the same time the Pinsons conveyed fee simple title to Day et al., who in turn executed an option to Auxier to purchase within six months at $26,000.

Following our opinion in the 298 Ky. case, the court entered a confirming order, reciting that Johnson and Bentley had been paid $21,063.32, the amount due them under the judgment of December 1943. The chancellor adjudged that they were only entitled to $14,047.62, resulting in an overpayment to them of $7,915.50, and adjudged that "plaintiffs" recover that amount with interest, and it was paid to the clerk.

This closes the history to the point of the instant

litigation. In February 1945, R. G. Wells filed affidavit setting out that in June 1935 he had obtained judgment against Earl Pinson with accrued interest, totaling $1,583.69, which was unsatisfied. Alleging that Pinson had no property to satisfy the judgment, and the clerk had in his hands a sum of money belonging partly to Earl Pinson, he asked for garnishment. Young asked like relief in respect of unsatisfied judgments against William. All suits mentioned in the prior appeals and the instant one, including the above motions, were consolidated with the original under which the Pinson lands were sold.

Attachments issued on the Wells and Young claims and were executed. Day et al. moved to discharge, and the creditors filed response and cross-petitions alleging that Day et al. had no right to or interest in, the fund, since they had conveyed to Auxier; that while Auxier held legal title, the Pinsons owned an equitable title, and that no one had a claim on such interest unless it be Auxier, and he was called upon to disclose. They prayed for a sale of a one-third interest in the lands to satisfy their claims. A reply by Day et al. denied in general and alleged "that as a part of the consideration for the deed to Auxier, they had bound themselves to proceed herein in such manner as might be necessary to recover from Bentley and Johnson, and so much of the fund in court, as might be determined to be due, for the use and benefit of Auxier, in his own right and as attorney for these parties and the Pinsons, and to account to him therefor."

Auxier filed intervening petition in the consolidated cases, in which he set out all matters transpiring up to this point, his activities as attorney, and particularly the pleading of Day et al., the option to purchase, which was extended periodically until October 14, 1943, and conveyance to him upon payment of $26,000 of his own money and interest on the sum these parties had advanced. He alleged that the Pinsons were parties to the deed, and they and Day et al. agreed to prosecute their claims for refund for his benefit, and to assign to him all rights and equities they might have in any fund growing out of former transactions. These facts he

alleged constituted him the real party in interest and entitled to the amount adjudged to be refunded.

In a second paragraph he alleged his employment by the Pinsons to, and that he did, represent them through all litigation in the Circuit and Court of Appeals; that he was employed by Day and associates all the way through as far as their rights were involved, and at all times rendered services necessary and proper, for which parties had agreed to pay him reasonable fees, which he alleged to be $10,000, with none paid. He asserted a lien on the judgment in favor of plaintiffs in the Pinson v. Bentley case, and the fund, under Sec. 30.200, KRS, superior to those of Wells and Young. He sought an order discharging the attachments and directing the clerk to pay him the fund.

This pleading brought joint answer from Young and Wells, admitting that Day and his associates put up the money for redemption, but say that it was advanced for the use and benefit of the Pinsons; that the deed to them was in trust to secure repayment of the money they had advanced; that it may be true that Day et al. executed the option, but "deny that they (holding the property in trust or for security) could convey legal title to Auxier, or anyone." They denied Auxier paid out of his own money the sum of $26,000 or any sum, but if so it was out of the property of Pinsons. They say that while it may be true that plaintiffs prosecuted their claim for "refund for such amount as might be finally determined," they deny that it was for the use and benefit of Auxier, but for the Pinsons, and that the money attached was their property. They denied specifically paragraph 2 (attorney's lien) and asked that the intervening petition be dismissed. This pleading was controverted.

Some proof was taken and upon hearing the chancellor adjudged that as the record stood then and at the time of former judgment, the Pinsons had no interest in the lands or fund; that Auxier had the right to proceed in the name of Day and his associates for his own use and benefit after he had exercised his option (Civil Code of Practice, Sec. 20) and held that the fund should be paid to him. The court further adjudged that "even if the named plaintiffs, the Pinsons, had any interest, Auxier had a superior lien to secure his attorney's fee, in excess of the amount in the clerk's hands."

The court discharged the garnishments of Wells and Young, insofar as they affected the funds in the clerk's hands. The creditors sought new trial on the sole ground that the evidence was insufficient to support the judgment in favor of plaintiff on motion to discharge the attachment; this was overruled and appeal is prosecuted.

As we read appellant's brief, it asserts the whole question to be; "Whether the money in the hands of the clerk belongs to the Pinsons or to Auxier," and asks if it belongs to Auxier, "how did he become the owner?" Appellants contend that he had no right to the fund, because the deeds from Pinson to Day to Auxier conveyed title only to the lands, and did not embrace the chose in actions, and cites authorities which hold that a deed to real estate does not convey personal property, whether on the land conveyed or otherwise, unless expressly stated. Cheatham v. Head, 203 Ky. 489, 262 S. W. 622. Appellees readily admit the fact that the deeds did not convey anything save the land, and the legal conclusion. It is contended, though not vigorously, that there was no assignment of the chose in action to Auxier.

The answer to appellants' question is to be found, not in the deeds or option but in the pleadings of Day and Auxier, and the proof adduced on the trial. There can be no doubt but the pleadings set up an enforceable equitable assignment without reference to the deeds or option, and it is upon these and the proof adduced, Auxier plants his case. He testified at length, and upheld sufficiently every allegation of his and the Day pleadings. He went over every step of his activities in the litigation, and coming down to the instant case, said that he had been authorized to prosecute the claim in the names of plaintiffs in the Day suit; to do the work, cost or attorneys' fees following to be taken care of by him, all done pursuant to the agreement with Day et al., and it was agreed that when the clerk collected the judgment he would make a check payable to them, and they endorse it to him, but he later concluded that his best course was to assert his claim by his intervening petition. He said that the Pinsons had no interest, legal or equitable, and that he was under no sort of obligation, legal, equitable, moral or otherwise to account to the Pinsons for any part of the fund. He said: "I have put more money in it than anyone else would have done. I worked for about nine years without receiving any

fee; the Pinsons have never indicated that they would demand any part of this money."

Mr. Rice (Day's asscoiate) testified that part of the consideration of the option and conveyance was that Auxier was to assume any liability for which they might be responsible in the litigation which was being conducted in their names; "We were to be absolutely free of any obligation in connection with the property, and likewise if there was any amount recovered in our names, or the names of the plaintiffs, it was to belong to him." He said that he had asked Auxier to put this in writing, "but he evidently considered our word was sufficient, so he did not put anything in the deed about it, but that was the agreement when we bought the property; we stepped in the shoes of the Pinsons, and when we conveyed Auxier stepped in our shoes."

Appellants introduced no proof, but merely filed as evidence copies of their original judgments, their executions, lis pendens notices, and other papers which were already in the record. No witness testified, thus there was no showing that the deeds to Day et al. constituted security or a trust for the benefit of the Pinsons.

Some confusion appeared because the judgment entered following our opinion in the 298 Ky. case recited that the $7,915.50 in the clerk's hands was adjudged to "plaintiffs." This arose from the fact that in the Day et al. petition the Pinsons joined as plaintiffs. As we read the petition it is clear that they did not set up claim to this fund. The chancellor placed this construction on the prior proceedings and judgment and recited that the former judgment should have been for Day, and that the Pinsons had no interest.

Auxier stands on the proposition that there was a valid assignment of all rights of the Pinsons, who in pleading agreed that Day et al. "obligated themselves to proceed in such manner as might be necessary to recover the fund in court * * * for the use and benefit of Auxier, in his own right and as attorneys for all parties." The general rule is that any language, however informal, if it shows the intention of the owner of a chose in action to transfer, so that it will become the property of the transferee, will amount to an equitable assignment. 4 Am. Jur. 76. As far back as Newby v. Hill, 2 Metc. 530, 59 Ky. 530, we held an assignment in

parol to be good; this case is cited along with several others in Commonwealth v. Wilhoit, 274 Ky. 831, 120 S. W. 2d 670, in which we held that the record showed an intention on the part of plaintiff to assign its right in any possible recovery, and this intention might be subject to amplification by proof, and is cited with approval in Turner v. Gambill, 275 Ky. 330, 121 S. W. 2d 705, holding that an oral assignment of a chose in action is valid. That there was, such and a sufficient assignment is evidenced by the uncontroverted proof.

There is little or no discussion by appellant of that part of the court's judgment holding that even if the Pinsons showed any right to the fund, Auxier's claim for fee prevailed under KRS 30.200. We shall not discuss that phase to any extent, but since the statute gives the lien, and we have held that it attaches at the time the service begins, Birkhead v. Ringo, 274 Ky. 498, 119 S. W. 2d 662, without lis pendens notice, except as to purchasers without notice, we are inclined to the opinion that the chancellor was correct, as he was in the remainder of his judgment, which we conclude must be and is affirmed.